The Commonwealth *against* JOHNSON and FELTON.

*RAWLE* obtained a rule upon the defendants, who were supervisors of the roads in the township of the northern liberties, to shew cause why a *mandamus* should not issue, commanding them to pay two orders drawn upon them by *Frederick Wolbert* and others justices of the peace, in favour of *Robert Brooke* and *Jacob Kessler*.

A *mandamus* lies to the super-visors of the roads, to compel them to pay an order drawn upon them by justices of the peace under the direction of an act of assembly.

Upon the return of the rule, a variety of facts were laid before the court, which it is not material to detail, as they did not bear upon the particular question hereafter noticed, namely, the authority of the court to issue a *mandamus* in

the present case. So far as they related to this point, the facts were these:

By an act of the general assembly passed the 17th *April* 1795, 3 *St. Laws* 1722, the governor was authorized to appoint three surveyors, to survey and regulate the streets &c. in the *Northern Liberties*, within specified boundaries; and the third section of the law enacted, in the following terms, " that the justices of the peace in the township of the *Northern* " *Liberties*, shall be authorized to draw orders on the super- " visor or supervisors of the roads for the said township, for " the pay and incidental expenses of the said surveyors, who " are hereby *enjoined* and *required* to pay the amount of " such orders, and the same shall be allowed to the said " supervisors in the settlement of their accounts." *Brooke* and *Kessler* were two of the surveyors appointed by the governor; and on the 6th of *May* 1809, an order for six hundred and thirty-four dollars and fifty-two cents was drawn on the supervisors by twelve justices, in favour of Mr. *Brooke*, for services rendered by him under the said act, and in favour of Mr. *Kessler* on the same account for one hundred and six dollars thirty-seven cents. These orders were presented to the defendants, who refused payment.

A number of objections were made to the legality of the orders, upon the ground of a supposed irregularity on the part of the surveyors and justices in carrying the law into effect, and also because the entire number of justices in the township, thirteen, had not signed them. But supposing the orders to be legal, still,

*Browne* and *S. Levy*, who shewed cause, contended that a *mandamus* did not lie. The great object of the writ of *mandamus*, they said, was to give a specific remedy, where none other existed; as to compel the admission of a party to an office or franchise of a public nature, to academical degrees, to the use of a pulpit, and the like; 3 *Bl. Comm.* 110; cases, in which no other form of action, and no indictment, could give the suitor the enjoyment of his right. But where he has another specific legal remedy, unless it be either extremely tedious, or, like the writ of assize, obsolete, the rule adopted in lord *Mansfield's* time, and uniformly followed since, has been to leave the party to that remedy, and to

deny the *mandamus*. The case of *The King* v. *The Bishop of Chester* (a) is full to this point. A *mandamus* to a bishop to licence a curate was refused, because the curate had another specific legal remedy by *quare impedit*. Taking this to be the rule, a *mandamus* should not issue to compel the payment of an order, or to permit the transfer of stock, because in each case, if the party has a right, he has a specific legal remedy, either by *indebitatus assumpsit*, or by an action on the case. It is believed that no case can be shewn in *England*, in which a *mandamus* has issued under these circumstances; and there are two direct authorities against it. The first is the case of *The King* v. *The Bank of England* (b), where the application was for a *mandamus* to the defendants, to permit the prosecutor to transfer 1000*l.* bank stock, and it was refused, because an action would lie for complete satisfaction equivalent to a specific relief. The other is *The King* v. *Bristow* (c), which is in point to the present case in every particular; for there the King's Bench refused a *mandamus* to a county treasurer, to obey an order of the quarter sessions for the payment of money, and referred the prosecutor to his remedy by indictment. Lord *Kenyon* in delivering judgment, said that the best way of preserving this beneficial writ, was to be sparing in the use of it; and that although the court would grant a *mandamus* to the justices to draw an order, yet they would not to the treasurer to pay it. The former falls within the true reason and purpose of the writ; the latter does not. In the case before the court, the surveyors may have an action against the supervisors for the nonpayment of the money, which is as specific a remedy as the *mandamus* itself, or they may proceed by indictment for their neglect of duty, as in *The King* v. *Bristow.*

*Sergeant* and *Rawle* for the *mandamus*, argued upon this point, that the reason, which had uniformly been assigned for the *mandamus*, and which had been stated by the defendants' counsel, was the very inducement to their application for it. The prosecutors have no other specific legal remedy; in fact they have no other certain remedy whatever. It is to be recollected that the surveyors did not contract with the

1810.

COMMON-
WEALTH
*v.*
JOHNSON.

(a) 1 D. & E. 396.　　(b) Doug. 506.　　(c) 6 D. & E. 168.

defendants, nor upon the credit of their personal responsibility; but that the contract was with the township, and their security was in the road tax fund, which the law expressly orders to be applied in satisfaction of their claim. An action against the supervisors must be either in their personal or official capacity. If in the former, it cannot appear that they will be able to discharge the judgment; if in the latter, they may go out of office before the suit is determined; and in no event can an execution go against the treasury. They cannot be indicted, because, inasmuch as the order may be enforced in another manner, the indictment is taken away by the act of 21 *March* 1806, section 13. 7 *St. Laws* 569; and if it were not, the prosecution would result only in a fine to the commonwealth. There is therefore no process but this, by which the surveyors can obtain payment of the order, or even what is equivalent to it; and that is a sufficient ground for the *mandamus*. In *The King* v. *Barker* (a) lord *Mansfield* said it ought to be used on all occasions where the law has established no specific remedy, and where, in justice and good government there ought to be one. It certainly has been often used by this court, in cases like this; as to compel county treasurers to pay warrants drawn by the commissioners. *The King* v. *The Bank of England* presents a very different case; for in an action against the bank, the plaintiff would have recovered satisfaction out of the very fund he wished to transfer. The only case that bears against us, is *The King* v. *Bristow*, which, although entitled to respect, is not binding as an authority. But in the first place, that was not a case in which the payment of the order was enjoined by statute. In the next place, the court refused the *mandamus* upon the ground that it would be descending too low to issue it to an officer so subordinate as a county treasurer; a consideration which has not governed this court heretofore, and which deserves very little attention. And lastly, it has been overruled, or at least it has been disregarded in a later case, in which the King's Bench expressly assert their authority to enforce by *mandamus* the payment of an award by commissioners, under an inclosure act. 2 *Tidd* 763.

(a) 3 *Burr.* 1267.

The opinion of the court, which was delivered upon the whole case, was on this point as follows:

TILGHMAN C. J. The point which required most consideration, was, whether the case was of such a nature as called for a *mandamus;* and we think that it is, because the supervisors are public officers, directed by the act of assembly to pay such orders as are legally drawn by the justices, and because the surveyors have no other specific remedy. It is said that the supervisors may be indicted for neglect of duty. But if they were indicted and convicted, the orders might still be unpaid. It is said also that if they withhold payment without just cause, they are liable to an action. Granting that they are, it must be brought against them in their private capacity; and there is no form of action against them, which, being carried to judgment, will authorize an execution to be levied on the treasury of the *Northern Liberties.* Now it was to this treasury that the surveyors had a right to look, when they acted under their commission from the governor. It may be said, that in truth their contract was with the township, and from the township they have a right to expect payment.

The court ordered the rule to be made absolute for a *mandamus* in the case of each surveyor.

Rule absolute.