SEWARD M. BAKER, *Petitioner, versus* THOMAS JOHNSON, *Treasurer of County of Cumberland.*

The Supreme Judicial Court, by the Act of 1852, c. 241, while sitting as a law court, is not a court of original jurisdiction.

It is not competent for a Judge at *Nisi Prius* to *order* the evidence to be reported, or to order the parties to agree upon a statement of facts. If the parties cannot agree to raise questions of law, the cause must be heard and determined at *Nisi Prius*, and the party aggrieved may allege his exceptions.

*Mandamus* is not grantable of right but by prerogative, and it is the absence of a specific legal remedy which gives the Court jurisdiction to dispense it. It cannot be granted to furnish an easier or more expeditious remedy.

So, also, the writ will be granted, if it be *doubtful* whether there be another effectual remedy, or if the Court does not clearly see its way to one.

There ought, in all cases, to be a *specific legal right*, as well as the want of a *specific legal remedy*, in order to lay the foundation for a *mandamus*.

The Supreme Judicial Court is clothed with plenary power to maintain order and decorum while in session, and may employ, for this purpose, such subordinate ministerial and executive officers as may be deemed necessary.

The law, in many instances, recognizes sheriffs as officers of the court, and establishes their compensation and that of their deputies when in attendance at its sessions.

There is, however, no statute which, in terms, requires such attendance of the sheriff, and yet so long and so universally has the custom prevailed for him thus to attend upon the Court, that an omission to do so without sufficient excuse, would be deemed an absolute dereliction of duty.

The fees of the sheriff and other executive and ministerial officers in attendance, are taxed by the Court.

These fees, thus taxed, the county treasurer is imperatively bound to pay.

The law gives no remedy by action against the county for claims of this nature which are to be paid from the county treasury; neither is there any specific or adequate remedy against a county treasurer, or upon his official bond, when he improperly withholds payment ordered by the court. Under such circumstances, a *mandamus* may be sustained.

ON REPORT from *Nisi Prius*, GOODENOW, J., presiding.

The petitioner, in this case, represented in his petition that at the January and March terms of the Supreme Judicial Court of Cumberland county, A. D. 1856, he was in attendance and performed sundry services as sheriff of said county; that his fees therefor were duly certified by the presiding judge; and that, having made demand upon the respondent, as treasurer

of the county, for payment, he had refused to pay the same. He, thereupon, prayed the Court to issue a writ of *mandamus*, peremptorily commanding said Johnson to pay over to the petitioner, from the county treasury, without delay, the amount alleged to be due, with legal costs.

Upon the petition and evidence presented, the presiding Judge ordered a report to be made to the full Court for decision, and that a copy of the order be served upon the respondent, that he may appear and show cause why the *mandamus* prayed for should not issue.

The respondent, by his counsel, appeared specially before the presiding Judge and objected to the jurisdiction of the Court, and to the introduction of the evidence. He also declined agreeing to a report of the case. But if the Court should decide that the matter should stand as upon *report* from the Judge at *Nisi Prius*, then it should appear that the respondent offered evidence that Daniel C. Emery, Esq., of Gorham, in the county of Cumberland, was duly appointed and commissioned as sheriff of said county, January 17, 1856; that he duly took and subscribed the oaths of office January 19, 1856; that he, thereupon, assumed the duties and responsibilities of that office; and that, at all times and thereafter, he had been ready and willing, by himself, and also with suitable and sufficient deputies to aid him, to discharge the same as well during the sessions of the courts, as at other times.

*F. O. J. Smith*, for petitioner.

*Howard & Strout*, for respondent, contended: —

1. That the petition does not state that the Court *ordered* or directed the petitioner's bill to be paid.

2. That *mandamus* will not lie when the petitioner has another legal remedy, nor when the party has an inchoate right only.

3. Where the title to an office is in dispute, the only mode of trying it is by information in the nature of a *quo warranto*. The Court will not determine the question on *mandamus*. 5 Hill, 616.

Baker *v.* Johnson.

RICE, J.—This is a petition for a writ of *mandamus*, and comes before us on a report ordered by the Judge at the April term of the Supreme Judicial Court for Cumberland county, 1856. There was a special appearance for the respondent, to object to the sufficiency of the petition and the matters therein set forth, to the jurisdiction of the Court below, and to the manner in which it has been brought into this Court.

By § 5, of c. 96, R. S., it is provided, that the Justices of the Supreme Judicial Court shall have power to issue writs of error, *certiorari*, *mandamus*, prohibition, *quo warranto*, and all other processes and writs, to courts of inferior jurisdiction, to corporations and individuals, which may be necessary for the furtherance of justice, and the due execution of the laws.

Before the passage of the Act of 1852, c. 246, "concerning the Supreme Judicial Court and its jurisdiction," petitions for any of the writs mentioned in the fifth section of c. 96, were heard by the Court when held by a majority of the Justices thereof, as well as when the Court was held by a single Justice.

The Act of 1852, above cited, modified, in very important particulars, the judicial system of the State. By it the late District Court was abolished and its business transferred to the Supreme Judicial Court. The number of Justices of the latter was increased from four to seven. Terms of the Supreme Court in the several counties for hearing and deciding questions of law and equity, by a majority of the Justices, were abolished, and the State was divided into three judicial districts, denominated the western, middle and eastern districts. Provision was also made, that the Supreme Court should annually be holden, by at least a majority of the Justices thereof, for the purpose of determining all questions of law or equity which may arise in any mode, in the several districts.

The Supreme Court, while sitting in the several districts for the purpose of hearing and determining questions of law and equity, is not a court of original jurisdiction. Its pro-

vince is to determine "motions for new trials upon evidence as reported by the presiding Justice, all questions of law arising on reports of evidence, exceptions, agreed statements of facts, cases in equity, and all cases civil and criminal, where a question of law is raised for the determination of the Supreme Judicial Court, sitting as a court of law or equity."

· It was manifestly the design of the Legislature, that the Supreme Judicial Court when held in the several districts, by a majority of the Justices thereof, should be constituted a "court of law," and that all matters of fact should be heard and tried in the several counties, before a single justice of said Court, and the preliminary proceedings and interlocutory orders, judgments and decrees, necessary to prepare cases for a final hearing on the questions of law that should arise therein should be had in the Courts in the several counties respectively. While, therefore, a case remains open for further hearing of testimony, or any interlocutory motions, orders or decrees remain undisposed of, such case is not in a condition to be marked "Law," on the docket of the county court where it is pending, nor to be entered upon the docket of the law court.

Motions for a new trial, founded upon the evidence as reported by the Justice before whom the case was tried, may be properly entered in the law court. Questions of law may also be raised for the law court on reports of evidence, as well as on exceptions or agreed statements of facts. But it is not competent for a Judge presiding at *Nisi Prius* to *order* the evidence to be reported or the parties to agree upon a statement of facts. If the parties do not consent to raise questions of law by a report of the evidence, or by agreed statement of facts, it is the duty of the presiding Judge to hear the evidence when addressed to the Court, or cause it to be produced before the jury, when properly addressed to a jury, and to make such rulings, orders, or decrees thereon, as · in his opinion the law of the case requires. To these rulings, orders or decrees, in matters of law, any party who is thereby aggrieved, may allege exceptions, which exceptions, when

properly authenticated, may, after all preliminary and inter-locutory matters have been disposed of, be entered upon the docket of the law court for final determination.

The petition now before us was entered before the proper tribunal. All the evidence which the parties desired to pro-duce should have been introduced in that Court, and unless the parties agreed upon the facts, or that the case should be reported, the presiding Judge should have entered such judg-ment or made such orders or decrees, as in his opinion the law required. If either party had been aggrieved by any of the decisions of the Judge, in matters of law, it was his right to allege his exceptions thereto. The case then would have been marked *law* on the county docket, and the except-ing party would enter his exceptions on the docket of the law court, for final determination. It was not competent for the Judge to order the case to be reported without the consent of the parties. It is not, therefore, regularly before us, and must be remanded to the court of the county for further pro-ceedings.

The case not being properly before us, we do not feel legally called upon to give it a further examination. But in-asmuch as the matter in controversy directly affects the prac-tice and proceeding in the highest judicial tribunal of the State, as well as the rights of individuals, we have, in con-formity with the desire of the parties, concluded to give the case some further consideration at this time.

The facts now before us, and uncontroverted, are, that the petitioner acted, during the time for which he claims pay, as sheriff of the county of Cumberland, so far, at least, as to preside in court, under the direction of the Judge who then held the terms of that court. His bill for his own services, and those of his subordinates who were in attendance upon the court, were audited and allowed by the presiding Judge. After being thus audited and allowed, the bills were pre-sented by the petitioner to the respondent, who is county treasurer of the county of Cumberland, for payment, and pay-ment was by him refused. Some objection was made that the

Judge did not, in terms, order the bills to be paid; though it seems to be conceded that they were allowed in the same manner as has ever heretofore been the practice in that county. In other counties, it is the practice of the clerk of courts, acting, of course, by order of court, to draw the requisite order upon the county treasurer, for the payment of such bills as are allowed by the Judge. It is not understood, however, that this objection is relied upon.

In view of such facts, and in the absence of special and technical objections, is *mandamus* the proper remedy for the petitioner?

*Mandamus* is a prerogative writ introduced to prevent disorder from a failure of justice and a defect of police, and, therefore, ought to be used on all occasions where the law has established no specific remedy, and where, in justice and good government, there ought to be one. Com. Dig. title Mand., A; *Rex* v. *Barker*, 3 Burr. 1265.

The writ of *mandamus* is not a writ grantable of right, but by prerogative, and amongst other things it is the absence of a specific legal remedy which gives the court jurisdiction to dispense it. It cannot be granted to give an easier or more expeditious remedy, but only where there is no other remedy, being both legal and specific. Tapping's Mandamus, 18.

If, however, there is no such specific legal remedy, the court will grant the writ. So if it be doubtful whether there be another effectual remedy, or the court does not clearly see its way to one, the writ will be granted. *Ib.* 19.

But where an action will lie for complete satisfaction, equivalent to specific relief, the Court will not so interfere. *Ib.* 20.

To found an application for a *mandamus*, there ought, in all cases, to be a specific legal right, as well as the want of a specific legal remedy.

*Mandamus* is a proper remedy to compel a secretary of state to deliver a commission to which a party is entitled. *Marbury* v. *Madison*, 1 Cranch, 137.

A *mandamus* will not lie against the secretary of the treas-

ury, unless the laws require him to do what he is asked in the petition, to be made to do. See WOODBURY, J., in *Reeside* v. *Walker*, 11 Howard, U. S. R., 272.

In *Kendall, in error,* v. *United States, ex. rel., Stokes & al.,* 12. Pet. 524, a *mandamus* was sustained, commanding the Post Master Gen. of the United States, to place the full amount of an award of the solicitor of the treasury, for extra services in conveying the mail, to the credit of the relatives, on the books of the post-office department. The award was made by virtue of an Act of Congress.

A writ of *mandamus* will only go where no other legal remedy exists; but when a party is entitled to relief, or can enforce his claim by action at law, he must pursue that remedy, and cannot ask the aid of a court by *mandamus.* 25 Wend. 680; 6 Hill, 243; 14 Barb. Sup. R. 52; *Ex parte Lynch,* 2 Hill, 45.

In the case last cited, the court refused to award a writ of *mandamus,* commanding the supervisors to *audit and allow* the salary of the relator, on the ground that he had an adequate remedy by action. But COWEN, J., in giving the opinion of the Court, very clearly intimated that if the right of action did not exist, *mandamus* would afford the proper remedy.

In *People* v. *Edmonds,* 15 Barb. S. C. R., 529, a writ of *mandamus* was awarded against the respondent, as treasurer of the county of New York, to compel the payment of a part of the salary of Robert H. Morris, one of the Judges of the Supreme Court of New York, upon an order of the supervisors of the county of New York. In delivering the opinion of the Court, STRONG, J., remarked, " it was not disputed by counsel for defendant, but that a *mandamus* would be an appropriate remedy, if the relator was entitled to the money, on his presenting the order of the supervisors. It is so, because he has no other adequate redress. The claim does not create a debt against the county which could be recovered in an ordinary action."

The writ of *mandamus* lies to command the treasurer and directors of a company to pay a sum of money awarded to

be due from the company, when the Act of Parliament, incorporating the company, does not authorize execution to issue against the effects of individual members of such corporation. Tapping's Mandamus, 169; *Rex* v. *St. Katharine's Dock*, 4 B. & Ad. 360.

It also lies to command an overseer to pay money under a parish contract. *Rex* v. *Beeston*, 3 T. R. 592.

In *Rex* v. *Bristow*, 6 D. & E., a *mandamus* was refused, to compel a county treasurer to pay an order of the quarter sessions, on the ground that the proper remedy, in such case, was by indictment. Lord KENYON, in the opinion of the Court, said, "this Court have no difficulty upon a proper case laid before them, in granting a *mandamus* to justices to make an order when they refuse to do their duty. But it would be *descending too low* to grant a *mandamus* to inferior officers, to obey that order; we might as well issue such a writ to a constable or other ministerial officer to compel him to execute a warrant directed to him, as to grant this application to the treasurer, to obey the order in question."

When the treasurer of the county of Surry refused to pay the expenses of a witness in a case of felony, pursuant to an order from the sessions of the borough of Southark, under the statutes of 58 Geo. III., c. 70, the proper remedy was held to be indictment or attachment, and not *mandamus*. *Rex* v. *Surry*, 1 Chit. R. 650.

So, too, in *Rex* v. *Erle*, 2 Burr. 1197, *mandamus* to a county treasurer, to reimburse constables' money expended for conveying rogues, vagabonds, and disorderly persons, was denied.

But in the case of *Com.* v. *Johnson*, 2 Binn. 275, it was held, that *mandamus* lies to the supervisors of the roads to compel them to pay an order drawn upon them by justices of the peace, under the direction of an Act of assembly. TILGHMAN, C. J., remarked, "that the point which required most consideration was, whether the case was of such a nature as called for a *mandamus*; and we think it is, because the supervisors are public officers, directed by the Act of Assembly to pay such orders as are drawn by the justices, and because the

Baker *v.* Johnson.

surveyors have no other specific remedy. It is said that the supervisors may be indicted for neglect of duty. But if they were indicted and convicted, the order might still be unpaid." The rule for a *mandamus* was made absolute.

A *mandamus* is the appropriate remedy to compel the county treasurer to pay, when he refuses to pay a demand which the board of supervisors have legally audited and allowed, or directed to be paid. *People* v. *Edmonds*, 19 Barb. S. C. R., 468.

By § 7 of c. 12, R. S., county treasurers are required to apply all moneys received by them for the use of their counties in defraying the expenses thereof, as the county commissioners, the District Court, and the Supreme Judicial Court, shall, according to law, by their written order, direct.

The Supreme Judicial Court is clothed with most plenary power to maintain order and decorum while in session. Such powers are absolutely essential to the proper and orderly dispatch of business. For this purpose it may employ such subordinate ministerial and executive officers as may be deemed necessary. Such officers, when thus employed, are the immediate ministers and servants of the court.

Sheriffs are the chief executive officers of their respective counties, and as such, they are authorized and required to execute all judicial processes, both civil and criminal, which emanate from the Court; and although there is no statute which, in terms, requires them to attend upon the court in term time, yet the law does, in many instances, recognize them as officers of the court, and establishes their compensation and that of their deputies, when in attendance at its sessions. And so long and universally has the custom prevailed for the sheriff, with his deputies, to give their attendance upon the court, at its sessions, that an omission to do so, without sufficient excuse, would be deemed matter of absolute dereliction of duty on his part.

The Supreme Judicial Court are required, by § 15, c. 152, R. S., to tax and allow costs in criminal proceedings legally pending before them. In like manner they have immemorially

allowed the fees of sheriffs and other executive and ministerial officers, while in attendance at their sessions. The determination of the Court upon the amount of such costs and fees, is final and conclusive. The law provides no other mode for adjusting and determining such claims. The duty of the county treasurer to pay the amounts thus allowed by the court, on the order thereof, is imperative. That officer is entrusted with no discretionary power in this class of cases. His duties are merely ministerial. The attempt on his part to exercise supervisory power is an assumption of authority without right, and to permit him to do so, would be to consent to have the powers of the government inverted, and to subordinate that tribunal, whose duty it is to have the general superintendence of all courts of inferior jurisdiction, and to issue all processes which may be necessary for the furtherance of justice, and the due execution of the laws, to the caprice of every petty ministerial officer who should choose to withstand its mandates.

The law does not give parties remedy by action against the county for those claims which are to be paid from the county treasury, upon the order of the court. If it were so, then the remedy of all parties, such as officers, jurors, and witnesses, for their fees in criminal prosecutions, would be by action against the county. The Legislature never designed to open so fruitful a source of litigation. Nor has it so done.

Nor is there any specific or adequate remedy given to parties by action against a county treasurer, who improperly withholds payment when thus ordered by the court. The law does not give to parties thus situated a right of action upon his official bond. An action against the treasurer, personally, if it could be maintained, might prove, for various reasons, wholly inadequate. Whether an indictment would lie against such contumacious or delinquent ministerial officer, we do not now determine. But that *mandamus* may be sustained we have no doubt.

*Case remanded to county court for further proceedings.*

TENNEY, C. J., and CUTTING, GOODENOW, and HATHAWAY, J. J., concurred.