## HALL v. SELECTMEN OF SOMERSWORTH.

The duty of towns to appropriate and pay for the support of Teachers' stitutes, a sum equal to two per cent of the amount required by law be raised for the maintenance of schools, is imperative.

If such duty is neglected a mandamus may properly issue to enforce it, and to compel the payment of the money by the selectmen to the school commissioner of the county.

PETITION FOR A MANDAMUS, filed by the school commissioner for the county of Strafford for the year commencing June 23, 1859, to compel the selectmen of Somersworth, in that county, to pay over to the commissioner the sum of sixty-five dollars and eight cents, being a sum equal to two per cent of the amount required by law to be raised

for the support of common schools in said town of Somersworth.

The petition alleges that the town was required by law to appropriate the above amount for the support of teachers' institutes in said county, and that the selectmen were also required seasonably to assess and pay over the same to the school commissioner; that on the 10th day of September, 1859, the petitioner notified in writing the selectmen of the amount so due, and requested them to pay the same, for the purpose aforesaid, and that the selectmen had neglected and refused to do so, but on the 5th of November, 1859, at a meeting of their board, duly holden, voted, that there "will not be any money paid by the town of Somersworth for the support of teachers' institutes for the year 1859." The petition is dated November 25, 1859; and, upon the order of notice to the selectmen being duly served, they appeared at the December term in this county, and a hearing was had on the petition.

*Christie,* for the petitioner.

The statute requires each town to appropriate, for the support of teachers' institutes, a sum equal to two per cent of the amount required by law to be raised for the support of common schools in said town. Ch. 1991, Laws of 1857. It is the duty of the selectmen of each town to pay over the said sum to the school commissioner. Comp. Stat., ch. 83, sec. 3. The selectmen are expressly required to assess this tax under that provision of the statute which makes it their duty to seasonably assess all school taxes authorized by law. Comp. Stat., ch. 45, sec. 3. If they have not so done they are guilty of official neglect. The selectmen are not relieved of this duty by the neglect of the town to make a formal appropriation of the money; because, (1.) No formal appropriation is required by law; (2.) It is the duty of the selectmen to pay over the sum in question—in the language of the law, "the sums required

to be appropriated," &c.—without regard to the fact whether such appropriation has been formally made or not; (3.) Otherwise the manifest intention of the legislature to make this an imperative duty of the towns, as much as the raising of their ordinary school tax, would be practically thwarted and nullified by the passive neglect of the towns.

That exposition of the statute is to be adopted which carries into effect the true intent and object of the legislature in the enactment. *Jones* v. *Gibson*, 1 N. H. 272; 1 Peters 64. In every well constituted government the highest judicial authority has a supervisory power over all who exercise public authority. If they refuse to perform their duty, it will compel them by mandamus. *Strong, Petitioner*, 20 Pick. 495; Bac. Abr., Mandamus. It is the office of a mandamus to compel the performance of official acts, whether they be of a judicial or ministerial character. *Chase* v. *Blackstone Canal Co.*, 10 Pick. 246; 2 Pick. 419; 12 Johns. 414; 16 Johns. 61; 18 Johns. 242; 19 Johns. 259; *Kimball* v. *Lamprey*, 19 N. H. 215; *Butler* v. *Selectmen*, 19 N. H. 553.

*Wells & Eastman*, for the defendants.

1. The sum required to be appropriated by towns for the support of "teachers' institutes" is not part of the sum to be raised for schools, but a sum equal to such a part. Selectmen are not required by chapter 45, section 3, Compiled Statutes, to assess such sums under "all school and school-house taxes authorized by law." The school taxes required by law and raised by vote of the town, " shall be appropriated to the sole purpose of keeping an English school"; including the purchase of fuel, and repairs. Comp. Stat., ch. 76, secs. 1, 2, 3. Selectmen shall assign to each district their proportion of the money thus assessed, and pay over the same to the prudential committee. Comp. Stat., ch. 76, sec. 4. In assessing such

taxes, the selectmen may assess a sum not exceeding five per cent more than the amount of such tax, to answer any abatements which shall be paid into the town treasury for the use of the town. Comp. Stat., ch. 45, sec. 4. The sum, then, must be raised by vote of the town, or the selectmen cannot legally assess a tax for the same. If, therefore, such sum is not raised and appropriated by the town, the selectmen have no authority to pay it over to the commissioner.

2. The law does not require or make it the duty of the selectmen to pay over to the commissioner such sum, even if the town make an appropriation for the support of a "teachers' institute." (1.) Section 3, chapter 83, Compiled Statutes, is not a law; it is simply a resolution of the legislature. Chap. 1326, Laws of 1852. General and binding laws are "enacted," as prescribed by the constitution. See Constitution, secs. 92, 44, 45; Comp. Stat., ch. 2, sec. 4; Jefferson's Manual, sec. 21; Cushing's Manual, sec. 13; Webster's Dict., "Resolve," "Enacted." (2.) But if such resolution is a law now in force, it only authorizes the selectmen to pay over the sum required to be appropriated by the town. It does not direct or say that they shall, nor does it make it their imperative duty to pay it over. It is left discretionary with the selectmen, and it is intentionally left so. "Teachers institutes" were held in this State before the appointment of county school commissioners. They are voluntary "associations of teachers, and all others interested in common schools, for improvement and mutual encouragement." They may elect their own officers, and may be held, arranged and managed by the officers of the association. Report of Board of Education to the Legislature for 1851, pages 11, 19. When any such "institute" is held in any county, it is made the duty of the commissioner to take the charge of it. Comp. Statutes, ch. 82, sec. 6. Nothing in the law gives the commissioner authority, or makes it his duty to appoint,

organize, or direct the time or place of holding "teachers' institutes." If, then, no "teachers' institute" is held in a county, it is not necessary that the money should be paid over to the commissioner; his salary and expenses being paid by the State.

3. It being discretionary with the selectmen, and the petition showing that the selectmen have acted in the matter, the court will not interfere by mandamus. Ang. & Am. on Corp., secs. 713, 714, and cases cited. *Quere*— Are the allegations of facts in the petition sufficient for mandamus to issue? We think not. See *Noxie* v. *County Commissioners*, 25 Me. 333.

BELLOWS, J. All the facts alleged in the petition in this case, independent of legal conclusions, were admitted by the respondents, and the objections to granting a mandamus urged at the hearing were, mainly, that there was no duty of an imperative character upon either the town or the selectmen to make the appropriation, but that the whole matter was discretionary, inasmuch as the teachers' institutes were voluntary associations; that the selectmen had no authority to assess such a tax without a vote of the town, and that there was no law requiring the selectmen to pay the money to the school commissioner.

Upon a careful examination of the various statutes upon this subject, we are all of the opinion that the duty of the towns to appropriate and pay over the two per cent for the support of teachers' institutes is imperative.

The provisions of the law of June 27, 1857, chapter 1991, are absolute in their terms, and leave no discretion to the town or to the selectmen. The law of July 3, 1846, was otherwise in this respect, and merely gave towns the power to raise a sum for that purpose, not exceeding five per cent of the amount required by law to be raised for the support of schools; but the law of June 27, 1856, provides that the amount shall be appropriated by each town

for the support of teachers' institutes; so that the amount is fixed and the terms used imperative. Nor does the fact that the teachers' institutes are, to some extent, voluntary associations, affect the interpretation of the law. They are, nevertheless, placed under the charge of the school commissioner, and if, for want of such institute, in any year, or other cause, the money received by him for their support is not all appropriated, he is required by law to pay it over to his successor, or deposit it for him with the county treasurer. Laws of 1857, ch. 1968.

The obligation' of the town, then, to pay their money is like other pecuniary obligations, such as to pay its debts and support the poor within its limits, and may be enforced by appropriate remedies. If it be regarded as a provision for the support of schools, and as coming under the general denomination of school taxes, then, as the amount is fixed or can be determined by computation, the selectmen would be authorized by chapter 43 of the Revised Statutes, section 3, to assess the same. If not so regarded, it would fall within the general idea of town charges, and would be provided for out of the money raised for such purpose, as town taxes; and a separate assessment would not be necessary any more than in the case of money for the support of the poor. *Tucker* v. *Aikin*, 7 N. H. 126, 127. In either event it would be the duty of the selectmen, who have the management of all the prudential affairs of the town, to provide for and pay over seasonably the required sum. It stands upon the footing of a debt or obligation, resting upon the town, which ought to be discharged in season to promote the objects designed by the law, and the selectmen would clearly be justified in paying the amount to the school commissioner, to be appropriated by him for the support of the yearly teachers' institute. This view we think is well sustained by adjudged cases. *Sanborn* v. *Deerfield*, 2 N. H. 251; *Horn* v. *Whittier*, 6 N. H. 88; *Andover* v. *Grafton*, 7 N. H. 298; *Pike* v. *Middleton*, 12 N. H. 278.

The remaining question is, whether this is a proper case for the exercise of the power to grant a writ of mandamus.

The Supreme Court has power to issue writs of mandamus, prohibition, and *quo warranto*, and all other writs and processes, to courts of inferior jurisdiction, to corporations and individuals, for the furtherance of justice and the due administration of the laws. Revised Statutes, ch. 171, sec. 3. In what cases the writ shall issue is to be determined by the course and usages of the courts in England and this country at common law. In England it is a prerogative writ, to the aid of which the citizen is entitled upon a proper case, previously shown to the satisfaction of the court. It was introduced to prevent disorder from a failure of justice and defect of police. It ought to be used upon all occasions where the law has established no specific remedy, and when, in justice and good government, there ought to be one. Lord *Mansfield*, in *Rex* v. *Barber*, 3 Burr. 1267. It is directed to some person, corporation, or inferior court, requiring them to do some particular thing, therein specified, which appertains to their office or duty, and is supposed to be consonant to right and justice. *Kendall* v. *United States*, 11 How. 524, 614. In *Rex* v. *Buxton*, 3 T. R. 592, a mandamus was issued to compel the defendant to pay over to one Atherton the weekly sum of £6, 6s. 2d., which the overseers of the poor had contracted to pay him for the support of the poor of the parish; it being admitted that the defendant had the money, to be applied for the relief of the poor, and had refused to apply the sum for this purpose. And in *Rex* v. *St. Katherine's Dock*, 4 B. & Ad. 360, a mandamus was granted to compel the treasurer to pay a sum of money awarded to be due from the company, when the charter did not authorize execution to issue against the effects of individual members and the goods of the company. See, also, 6 Bing. 668. In every well constituted government the highest judicial authority must necessarily have a supervisory power over

all inferior tribunals, magistrates, and all others exercising public authority. In the exercise of this power the writ of mandamus may be used, not however as matter of right, but granted at the discretion of the court, and with much caution, and where there is no other adequate and specific remedy. *Strong, Petitioner,* 20 Pick. 484, 495, 497. In *Kendall* v. *United States,* 12 Pet. 524, it was held that a mandamus lies to compel the Postmaster-General to credit the relator with a certain sum which was ascertained and settled to be due. In *Commonwealth* v. *Hampden,* 2 Pick. 414, it was held that under a provision that the court of general sessions should build or provide, at the charge of the county, a house of correction, the duty was peremptory, and a mandamus should issue. In *Carpenter* v. *Commissioners of Bristol County,* 21 Pick. 258, it was held that the writ lies to all inferior tribunals, magistrates and officers, and extends to all cases of neglect to perform a legal duty, where there is no other adequate remedy. Where, in laying out a highway, the damages to a land owner were duly assessed and certified to the commissioners, who declined to give an order on the county treasurer, for the reason that the road was afterwards discontinued, *Shaw,* C. J., held that it was a proper case for a mandamus to compel the commissioners to draw the order. *Harrington* v. *County Commissioners,* 22 Pick. 263. So a mandamus was issued to require county courts to assess damages for injury to the petitioner's land by a road located so near as to injure his buildings by blasting. *Dodge* v. *Essex County,* 3 Met. 380. So a mandamus will lie to compel a county treasurer to pay a sheriff for his services in attending court, the account having been allowed by the presiding judge (*Baker* v. *Johnson,* 41 Me. 15, and many cases cited), to compel a county treasurer to pay a demand legally allowed by the supervisors; *People* v. *Edmunds,* 19 Barb. 468; to compel a school district from which another has been taken, to pay over the proportional amount of the value of

the school-house retained by the old district; *District No.* 2 v. *District No.* 1, 3 Wis. 333. See, also, *Kimball* v. *Lamprey*, 19 N. H. 215; *Butler* v. *Selectmen of Pelham*, 19 N. H. 553; *Ballou* v. *Smith*, 29 N. H. 530.

We also think that the case before us comes within the principles established for the exercise of this power. The respondents are public officers, the duty in question is of a public nature, and the money, when paid over, is to be applied to a public object. It concerns the due administration of the laws that a duty like this should be promptly performed; and unless some other adequate and specific remedy exists, the court would not hesitate to resort to the summary proceeding of a writ of mandamus. If the selectmen were liable to indictment, as in case of neglect to provide for the poor, it could not be said to be an adequate and specific remedy, inasmuch as it would place no money in the hands of the commissioner; nor can the court see any other remedy that can be regarded as adequate and specific, and at the same time free from serious doubt. No right of action is given by the statute to any one against the selectmen, or the town, to recover this money, and it is, to say the least, doubtful whether, without some such provision, any action could be maintained. Under such circumstances it has been held that a mandamus may properly be granted. *Baker* v. *Johnson*, 41 Me. 24; *Harrington* v. *Berkshire Co.*, 22 Pick. 268; *Kendall* v. *United States*, 12 Pet. 524, 614. In *Kimball* v. *Lamprey*, 19 N. H. 210, a mandamus issued to compel the old board of selectmen to deliver up books to the new board.

We hold, then, that the duty is clear and specific, and that there is no other adequate remedy; and we hold, also, that the money ought to be paid over to the school commissioner. By the law of July 12, 1850 (chapter 955), it is provided that it shall be the duty of each county school commissioner to take charge of the teachers' institutes

that may be held in his county. This law provides for the appointment of county school commissioners, and defines their duties. The act of June 26, 1857 (ch. 1968, sec. 1), provides that the commissioners shall report annually to the legislature the sums of money received by them from each and every town in their respective counties, for the support of teachers' institutes, and the manner in which they have expended the same, specifying to whom paid and for what purpose, and the balance remaining in their hands. Section 2 provides that no money shall be appropriated by them for their own compensation, for taking charge of the institutes or teaching in the same. Section 3. "Each of the said commissioners shall pay over to his successor, or deposit with the county treasurer, to be paid to the new commissioner, on demand, the balance of all money received by him for the support of institutes, remaining in his hands unappropriated." By joint resolution of January 8, 1853, chapter 326, the selectmen of each town in this State are authorized to pay over to the school commissioner of their county the sum required by law to be appropriated by the town for the support of teachers' institutes. This resolution is brought into chapter 83 of the Compiled Statutes, and is the third section. The law of June 27, 1857, fixing the sum to be appropriated by law for teachers' institutes, is entitled "An act in amendment of chapter 83 of the Compiled Statutes, relating to teachers' institutes," and it repeals section 2 of that chapter. It of course recognizes the whole chapter as part of the law of the State, and leaves no doubt of the purpose of the legislature to entrust the expenditure of this fund to the county commissioners. And such, we think, must be the conclusion, independent of the joint resolution of January 8, 1853. The commissioner, then, is the proper person to act as the relator in a case of this sort, he alone being designated to appropriate the money when received.

In this case, there having been notice of the petition, and a hearing of the parties before us, and no suggestion of any other objection than those already disposed of, there must be granted, in accordance with the views here stated, a peremptory mandamus.