THE STATE, EX REL. RICHARD V. LINDABURY, v. THE
 BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY
 OF OCEAN.

Section 100 of the Criminal Procedure act provides that it shall be the
 duty of the prosecutor of the pleas to use all reasonable and lawful
 diligence for the detection, arrest, indictment and conviction of offend-
 ers, and that all necessary expenses incurred thereby, verified to and
 approved under his hand by the presiding judge, should be paid by
 the board of freeholders. *Rev.*, *p.* 286. *Held—*
 1. That under this section the prosecutor of the pleas had power, with
 the concurrence of the presiding judge of the Court of Oyer and Ter-
 miner, to employ associate counsel to assist in the trial and prepara-
 tion for trial of a homicide case.
 2. That the presiding judge's certificate of approval of the compensa-
 tion of such associate counsel was conclusive, both as to the necessity
 of such expenses and the sum to be paid; and that it was the duty of
 the board of freeholders to pay the sum so certified on the presenta-
 tion of such certificate.
 3. That *mandamus* is the proper remedy to compel the board to pay a
 bill so certified.
 4. That official action of the board which manifested an intention not
 to admit the relator's right until a decision upon that right was ob-
 tained, was sufficient evidence of a refusal to pay to justify the award
 of a *mandamus*.

·On rule for a *mandamus*.

At the December Term, 1884, of the Court of Oyer and
Terminer of Ocean county, an indictment was presented by
the grand jury against Elson K. Rockwell and four others,
for the murder of James I. Wainwright. The indictment was
traversed and came on for trial at the term of January, 1885.
The trial was begun on the 20th of January, and concluded
on February 27th, resulting in a verdict of guilty of murder
of the second degree as against Rockwell.

The relator, a counsellor-at-law of this state, was on the
29th of November, 1884, employed by the prosecutor of
the pleas of the county of Ocean, with the approbation of

the presiding judge of the Court of Oyer and Terminer, to aid the prosecutor in the preparation of the case for trial, and as associate counsel he participated in the trial. For his services the relator presented to the board of chosen freeholders his bill, with certificates annexed and his affidavit, as follows:

"The Board of Chosen Freeholders of the County of Ocean, State of New Jersey,

"To R. V. Lindabury,     Dr.

"1885.

"Feb. 27.    To 50 days' service in the prosecution of the case of The State *v.* Elson K. Rockwell and others, on indictment for murder......... $2,000 00

"I hereby certify that the above bill is correct, and not exorbitant. That the services were performed, and were necessary to the case of The State *v.* George Wainwright, Elson K. Rockwell, Julia Jane Wainwright, Mary Emma Wainwright and Chas. Wainwright.

"THOS. W. MIDDLETON,
"*Prosecuting Attorney.*

"I approve this bill and order it to be paid.
"B. VAN SYCKEL,
"*Justice of Supreme Court of New Jersey.*

"State of New Jersey, Ocean county, *ss.*—R. V. Lindabury, on his oath, saith the within account is true, fair, correct and just.
"R. V. LINDABURY.

"Sworn and subscribed before me, 27th day of February, 1885.
"B. VAN SYCKEL,
"*Justice Supreme Court.*"

The relator's bill was presented at a meeting of the board on March 11th, 1885, laid over to an adjourned meeting held

Lindabury v. Freeholders of Ocean.

March 13th, and then on motion was laid over until the May meeting.

At the May meeting, held May 11th, the following proceedings appear by the minutes of the board :

"Bill of R. V. Lindabury, Esq., being taken up, E. H. Jones offered the following resolution : *Resolved*, That the bill of R. V. Lindabury be paid. J. M. Bean move to amend, reducing the bill from $2000 to $1500, and Mr. Smith moved to amend the amendment that a vote of the board be taken whether it should be $1200 or $1500, and, upon call of the townships, it was ordered that the sum of $1500 be paid to the said Lindabury."

In compliance with this resolution the county collector gave to the relator a check for $1500, which the relator received as payment on account.

The relator obtained a rule to show cause for a *mandamus* commanding the board to pay the balance remaining unpaid. Depositions were taken under the rule, and the case was submitted on briefs.

Argued at June Term, 1885, before Justices DEPUE, VAN SYCKEL and SCUDDER.

For the relator, *Frank Bergen.*

Contra, *I. W. Carmichael* and *Mark R. Sooy.*

The opinion of the court was delivered by

DEPUE, J. The first contention against the allowance of this writ is, that there has been no such refusal to pay the balance of the relator's bill as would lay the foundation for a writ of *mandamus.* It is not disputed that the resolution of May 11th, 1885, was equivalent to a refusal to pay. The contention is, first, that the meeting of the board on that day was illegal, and, second, that its session was not such a meeting as that an order for the payment of the relator's bill could then lawfully be made. Hence the argument is that the

refusal of the board to pay the relator's bill was no neglect of any duty owing to him.

The act of 1880 provides that no bill shall be ordered paid by the board of chosen freeholders of any county of this state, except at a regular meeting of said board, and then only when properly itemized and verified according to law. *Pamph.. L.* 1880, *p.* 316. The sixth section of the statute in relation to chosen freeholders provides for a stated meeting of the board to be held on the second Wednesday in May in each year. At this stated meeting members are required to attend without any notice. The tenth section provides for special meetings to be convened by the director, or in case of his absence, inability or death, then by the clerk of the board, on application in writing of three of the chosen freeholders, specifying the business, object and purpose of calling such board, and upon notice in writing directed to the respective members of the board, and left at their respective places of abode, mentioning therein the time and business, object or purpose of such meeting. *Rev., pp.* 128, 129. The supplement of 1875 provides that whenever it shall be necessary to convene a special meeting of the board, the clerk, on receiving the notice of meeting prescribed by the tenth section of the act, shall convene a meeting of the board by a notice in writing directed to the respective members of the board, and mailed to the post-office nearest to their respective places of abode, at least ten days prior to the day of meeting. *Rev., p.* 134, § 46. A supplement passed February 28th, 1883, makes it the clerk's duty to convene special meetings of the board on the written or printed request of the director or any three members, specifying the business, object and purpose thereof, by notice to the members sent by mail at least five days before the day of meeting, and stating the business, object and purpose thereof. *Pamph. L.* 1883, *p.* 44. The act of 1880 does not restrict the power of the board to order bills paid to the stated meetings prescribed by the sixth section of the act. Any meeting, stated or special, is a regular meeting within the meaning of that act.

Lindabury v. Freeholders of Ocean.

The meetings of March 11th and May 11th were convened by a notice in writing, signed by the clerk, and duly posted to each member of the board. The meeting of March 13th was a meeting pursuant to an adjournment. The calls for the meetings of March 11th and May 11th were not made in compliance with the written request of the director or members, prescribed by the statute, nor did the notices thereof mention the business, object and purpose of calling the board. In that respect the action of the clerk was irregular. If the members of the board had refused to attend or to consider the relator's bill on account of the irregularity of the proceeding by which the board was convened, there would be much force in the present contention that the defendants are in no default. But it appears that at the meetings of March 11th and 13th every member of the board in office was present. No objection was made to the manner in which the board was convened. The board organized and proceeded to the transaction of business. By such organization it became a board *de facto*. Bills to a considerable amount were received and acted upon; some ordered paid, others laid over for further consideration. The relator's bill was received by the board and laid over until the May meeting. At the May meeting eight of the ten members of the board were present. No objection was made to the proceedings of the clerk in convening the board. The board organized and proceeded to transact business. The minutes of the preceding meeting were read and approved; bills were received and ordered paid. The relator's bill was taken up and $1500 was ordered to be paid, on the assumption that it was the province of the board to determine whether it should pay or not, and how much should be paid. Furthermore, the board, as at present constituted, in response to this rule, have adopted the action of the preceding board at the May meeting, and refuse to pay the relator's bill, on the ground that the county is under no obligation to pay it. To justify proceeding by *mandamus* there need not be a positive refusal to perform the duty; it is sufficient that a manifest intention not to perform it be shown. *State* v.

*Rahway,* 4 *Vroom* 110; *Cleveland* v. *Board of Finance,* 9 *Id.* 259. Where the official action of the board makes it clear that the board does not intend to admit the relator's right until a decision upon that right is obtained, the facts amount substantially to a refusal. *State* v. *Freeholders of Hudson,* 6 *Vroom* 269, 278. The proof of the defendants' refusal to pay the balance of the relator's bill is plenary.

Nor should the relator be denied this writ on the ground that remedy by action is the proper relief. The theory of the relator's claim to have this money paid by the county is, that the approval of his bill by the presiding judge of the court, and the order for its payment, are an auditing of his account, by force of which the duty is laid upon the board of freeholders to provide for the payment of the sum so certified, without any qualification or discretion, and it is settled that in such cases a *mandamus* may issue. *Clarke* v. *Jersey City,* 13 *Vroom* 94. An examination of the precedents will show that the practice of the court is, that where the facts are in dispute the court will generally leave the party to his action; but where the facts are undisputed, the court—the relator having a right to the specific relief sought—will exercise a discretion in deciding the legal questions on an application for the writ, or putting the party to an action. This practice is convenient and conducive to the speedy administration of justice, especially since the practice has grown up of facilitating, in proper cases, a review by writ of error of the decision of this court in granting or refusing writs of *mandamus.* We consider the case, properly here for consideration, upon the merits.

In this state it is the settled doctrine that the expenses incident to the administration of justice devolve upon the several counties, except where there is express legislative provision for the payment of such expenses by the state. For this doctrine I need cite only *State, Lewis, pros.,* v. *Hudson County,* 8 *Vroom* 254. It is also undeniable that the employment of additional counsel to assist the prosecutor of the pleas in the prosecution of indictments in special and difficult cases, is an expense that falls within the category of expenses in further-

ance of the due administration of justice, and are such expenses as, within the case cited, the board of freeholders might authorize to be paid out of the public funds without a misappropriation of the public money, as expenses incurred in the furtherance of the due administration of justice—in the prosecution and punishment of offenders against the public. Indeed, the official action of this board on the relator's bill is a concession that the relator's services were of this character. The board appropriated out of the county funds $1500 as compensation for these services. The whole dispute seems to be whether the amount of the relator's compensation is in the discretion of the board, or to be determined by the official certificate of the court.

In State, Lewis, pros., v. Hudson County, already cited, this court, while it affirmed the obligation of the county to defray the expenses incurred in the due administration of justice, regarded the obligation as a moral obligation merely, and, as the law then stood, the obligation was a moral obligation, in the sense that there was no statute which imposed the duty as a legal duty or prescribed any means for determining the amount that should be paid. Hence the court in that case treated the whole subject as being within the discretion of the board as to whether such expenses should be paid, and left it discretionary with the board as to the sum that should be paid. To meet this condition of affairs section 100 of the Criminal Procedure act was passed. That section enacts that " it shall be the duty of the prosecutor of the pleas for each county to use all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws; and all necessary expenses incurred thereby, verified to and approved under his hand, by the presiding judge of the Court of Oyer and Terminer or General Quarter Sessions of the Peace for any county, shall be paid by the board of freeholders thereof." *Rev.*, p. 286.

The language of the section quoted is quite general. It is made the duty of the prosecutor "to use all reasonable and lawful diligence for the detection, indictment and conviction

of offenders," and the payment of "all necessary expenses in-
curred thereby" is enjoined upon the board of freeholders.
A construction of the statute which would restrict its provi-
sions to the personal efforts of the prosecutor, and his personal
expenses, without authority to employ other means and instru-
mentalities to aid him in the discharge of his duty, and to
incur expense thereby, would be too narrow to effect the legis-
lative purpose.   On such a construction the prosecutor would
not be able to have a diagram prepared, nor to have a chemical
analysis made, nor to employ a detective, with any assurance
that the expense necessarily incurred thereby would be paid.
Such a construction would leave to a prosecutor an excuse for
the lax performance of duty, that he had no authority to incur
the requisite expense.   The plain intent of the statute was to
confer upon the prosecutor authority to provide reasonable
means to aid him in the performance of his official duties, with
a guaranty that the necessary expenses incurred should be paid ;
and it was left to the court by the certificate and approval
of the presiding judge to determine the reasonableness of
the means employed, and the necessity of the expenses incurred.

But it is insisted on the part of the defendants that the
prosecutor was disabled from employing counsel to assist him
in the prosecution and trial of indictments, and that therefore
section 100 of the Criminal Procedure act is inapplicable.
This contention is placed on two grounds : *First*, upon the
first section of the act of April 16th, 1846, which provides
for the appointment of a prosecutor in each county, whose
duty it should be to prosecute the pleas in such county in the
absence of the attorney-general ; and the third section of the
act of February 24th, 1854, which provides that the criminal
business of the state should be prosecuted exclusively by the
prosecutor of the pleas, except in a county where, for the time
being, there may be no prosecutor, or where the prosecutor
desires the aid of the attorney-general.   *Rev., p.* 56, §§ 3, 4.
The act of 1846 was in this respect substantially a re-enact-
ment of the act of December 11th, 1823.   *Harr. Comp., p.* 49.
It created the office of prosecutor of the pleas to conduct the

Lindabury v. Freeholders of Ocean.

prosecution of criminal pleas in the absence of the attorney-general. Under this act the attorney-general still had the right to prosecute the pleas in any county, and when he appeared for that purpose the prosecutor of the pleas was superseded. *State, ex rel. Clawson*, v. *Thompson, Spenc.* 689, 691. The third section of the act of 1854, which placed the criminal business of the several counties in the exclusive charge of the prosecutors, was designed to take from the attorney-general the right to appear and supersede the prosecutors of the pleas in the prosecution of criminal offences in the several counties. That such was the intent of this section is apparent from the fact that it is embraced in an act entitled " An act to define the duties and fix the salary of the attorney-general." On constitutional grounds the section could receive no other construction. If the order of the court under review had been to allow the prosecutor of the pleas extra compensation for his services beyond that fixed by law, the defendant's contention on this head would have been sound. *Evans* v. *City of Trenton*, 4 *Zab.* 764. It would have had like weight if the court had superseded the prosecutor and appointed another in his stead, and ordered the appointee of the court to be paid by the county. *State, Hoxsey, pros.*, v. *City of Paterson*, 11 *Vroom* 186, is an apt precedent by way of distinguishing an order superseding a prosecutor from one like that under review, directing compensation for associate counsel employed by him for his assistance. In that case the charter of Paterson empowered the board of aldermen to employ a city counsel and to fix his salary by ordinance, and the ordinances of the city prescribed that the city counsel should defend all actions against the city. The Court of Errors held that the corporate authorities could not withdraw and take out of the hands of the city counsel any particular case or class of cases and confide their management to others, but that they might employ associate counsel in cases in which the city was interested. The case last cited is directly in point, in repudiation of the notion that associate counsel might not lawfully be employed to assist the prosecutor in a criminal prosecution whenever the

assistance of additional counsel is reasonable and proper in the due administration of justice.

*Second.* It was contended that the services rendered by the prosecutor should have been performed by the attorney-general, whose services might have been had without expense to the county, and that it not appearing in the depositions that the attorney-general had been requested to attend, the employment of the relator is not shown to have been reasonable. *Pamph. L.* 1882, *p.* 214. The act of 1882 is a supplement to the act of February 11th, 1854, simply substituting a fixed salary for the attorney-general in lieu of other compensation, and by the act of 1854 it is made the duty of the attorney-general to attend the trial of homicide cases and other high crimes, on the written request of a justice of the Supreme Court or of the board of freeholders only when such attendance is not incompatible with his other duties. *Rev., p.* 56, § 1. Waiving for the present the question of the conclusiveness of the judge's certificate, and treating his action only as an audit of the relator's account, the presumption, in the absence of proof, is that this duty was performed, and that the account as audited and allowed is correct. *State, Butts, pros.,* v. *Mayor of Hoboken,* 9 *Vroom* 391.

In the next place it was insisted that the judge's certificate of approval was only *prima facie* evidence; that it was the province of the board of freeholders to determine whether the employment of the relator was needful and proper, and to fix the compensation to be paid for his services, and that the board was not in either respect controlled by the certificate of the judge. *People* v. *Supervisors of Fulton,* 14 *Barb.* 52, was relied on for that position. The statute in that case provided that a reasonable compensation to the district attorneys for certain services, to be certified by one of the justices of the Supreme Court, should be audited and allowed by the board of supervisors, and paid out of the county treasury. It will be observed that the statute there in question conferred upon the board of supervisors the power to audit and allow—words importing the exercise of judgment and discretion—to hear,

examine, adjust, pass upon and settle the account, and then allow it. But notwithstanding the language of the act, the court did not hold that the judge's certificate was not conclusive. It decided that, as a matter of pleading, the question might be raised by demurrer, and the judge who delivered the opinion of the court inclined to the opinion that the board of supervisors had a discretion as to the amount they would allow, notwithstanding the judge's certificate; but the case was disposed of on another ground. The statute now in question contains no words implying a discretion in the board of freeholders. The board is not called upon to audit and allow accounts presented under this act. The act requires the expenses to be verified—that is, shown to be reasonable and necessary—not to the board of freeholders, but to the presiding judge, and the approval of the expenses devolves upon him; and upon approval under his hand the act declares that the expenses shall be paid by the board of freeholders.

The duty to audit and allow is delegated to the presiding judge, and his approval is the voucher upon which payment is to be made. His certificate is made a final determination of the obligation to pay and of the sum to be paid, as much as if it had been expressly fixed by statute. In *People, ex rel. Downing,* v. *Stout,* 23 *Barb.* 338, a statute empowered the board of supervisors to establish the fees for recording births and marriages, and the court held that when the fees had once been fixed under the authority conferred by the statute, they were binding upon future boards in auditing and allowing accounts for such services, as though they had been fixed by the legislature, and that subsequent boards were obliged to allow accounts on the basis of the prescribed fees. *Morris* v. *People,* 3 *Denio* 382, in which the payment of a salary fixed by law was in controversy, is a precedent of similar import. The ground of decision in these cases was that the amount to be paid being fixed by statute or under legislative authority, the boards of supervisors, notwithstanding the extensive powers conferred upon them in reference to county charges, had in such cases no discretion to exercise, and that the duties

of the board in the premises were simply ministerial, to audit on the basis of the statutory evidence and to order payment accordingly. *People* v. *Supervisors of Kings*, 16 *Wend*. 520 ; *Carr* v. *St. Louis*, 9 *Mo*. 195 ; *Auditors of Wayne*, 13 *Mich*. 233 ; *Olds* v. *Commissioners of Franklin Co.*, 20 *Ohio St*. 421 ; *Commissioners* v. *Johnson*, 2 *Binn*. 275, are precedents of like import. In this class of cases the relief by *mandamus* is granted, the amount of the demand having been definitely fixed by the proper authority, and only the ministerial duty to make payment remaining to be performed. *High on Ext. Rem.*, §§ 351, 356. That principle is applicable to the case in hand.

We think that the judge's certificate of approval of these expenses is conclusive, and that on the presentation thereof to the board of freeholders the same should have been paid. A peremptory *mandamus* is allowed, commanding the payment of the balance unpaid of the relator's bill, with interest from May 11th, 1885. The relator is also entitled to costs on this rule.