952 A.2d 1025

IN THE MATTER OF THE APPLICATION OF ROBERT L. TAYLOR, CAPE MAY COUNTY PROSECUTOR, FOR AN ORDER DIRECTING THE CAPE MAY COUNTY BOARD OF CHOSEN FREEHOLDERS TO APPROPRIATE NECESSARY FUNDS FOR THE CAPE MAY COUNTY PROSECUTOR'S OFFICE.

Argued March 26, 2008—Decided July 28, 2008.

164

*Russell L. Lichtenstein* argued the cause for appellant Cape May County Board of Chosen Freeholders (*Cooper Levenson April Niedelman & Wagenheim,* attorneys; *Gerard W. Quinn,* on the briefs).

*Robert L. Taylor,* Cape May County Prosecutor, argued the cause for respondent, pro se (*Mr. Taylor,* attorney; *Mr. Taylor and John Vincent Molitor,* Assistant Prosecutor, of counsel and on the briefs).

*Dominick DiRocco* argued the cause for amicus curiae New Jersey Association of Counties.

*Robyn B. Mitchell,* Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Anne Milgram,* Attorney General, attorney).

*James T. Dugan,* Assistant County Counsel, submitted a brief on behalf of amicus curiae County of Atlantic (*James F. Ferguson,* Atlantic County Counsel, attorney). *Donna M. Whiteside,* Assistant County Counsel, submitted a brief on behalf of amicus curiae County of Camden (*Deborah Silverman Katz,* Camden County Counsel, attorney).

*John J. Scaliti,* Assistant Bergen County Prosecutor, submitted a brief on behalf of amicus curiae County Prosecutors Association (*Ronald J. Casella,* Cumberland County Prosecutor, President, attorney; *Mr. Scaliti and Catherine A. Foddai,* Assistant Bergen County Prosecutor, of counsel and on the brief).

*Gary D. Wodlinger,* Cumberland County Counsel, submitted a brief on behalf of amicus curiae Cumberland County Board of Chosen Freeholders (*Mr. Wodlinger,* attorney; *Jane B. Capasso,* on the brief).

*Cindy Nan Vogelman* submitted a brief on behalf of amicus curiae County of Hudson (*Chasan Leyner & Lamparello,* attorneys).

*Joseph J. Colao, Jr.,* Special County Counsel, submitted a brief on behalf of amicus curiae County of Monmouth (*Malcolm V. Carton,* Monmouth County Counsel, attorney).

*Thomas C. Miller,* Somerset County Counsel, submitted a letter in lieu of brief on behalf of amicus curiae County of Somerset.

*Joseph J. Bell, Jr.,* Warren County Counsel, submitted a brief on behalf of amicus curiae County of Warren (*Mr. Bell,* attorney; *Mr. Bell, Kimberly Bacen and Erik A. Hassing,* on the brief).

Justice WALLACE, JR., delivered the opinion of the court.

The Cape May County Prosecutor (Prosecutor) petitioned the Assignment Judge pursuant to *N.J.S.A.* 2A:158–7 to direct the Cape May County Board of Chosen Freeholders (County) to appropriate additional necessary funds for the Prosecutor's Office beyond the amount initially approved by the County. Most of the funds sought were for salary increases that were consistent with employees in other offices of county prosecutors throughout the State. Some of the requests, however, exceeded the previously agreed-to amounts in certain collective bargaining agreements. The Acting Assignment Judge rejected the County's argument that the Prosecutor must establish that the additional expenditures were "necessary" and concluded that the Prosecutor need only show that his requests for additional funds were "appropri-

ate." Applying that standard, the judge essentially granted the Prosecutor's requests for those employees who were not governed by existing collective negotiations agreements and denied the salary increases for those who were governed by such agreements.

The Appellate Division affirmed. We granted the County's petition for certification and now reverse. We conclude that the plain language of *N.J.S.A.* 2A:158–7 authorizes the Assignment Judge to approve only those expenditures beyond those appropriated by the County that are "reasonably necessary."

## I.

The facts are not contested. In the fall of 2005, the Prosecutor submitted his 2006 budget request to the County. In anticipation that the County would not fully fund his request, the Prosecutor also sought permission from the New Jersey State Attorney General's Office to file an application under *N.J.S.A.* 2A:158–7 (*Bigley* application [1]). In turn, the Attorney General conducted an analysis of the Prosecutor's Office before authorizing the Prosecutor to proceed with a *Bigley* application if necessary.

When the County failed to approve all of the Prosecutor's budgetary requests, the Prosecutor filed the *Bigley* application in the Law Division. The Prosecutor sought authorization to increase appropriations for additional staff and facilities, funds for a community outreach program, and increases in salary and wage levels. Several of the requested salary increases exceeded the amounts originally submitted in the Prosecutor's 2006 budget request to the County. The County and the Prosecutor eventually reached an agreement for most of the funds sought, but they could not resolve the amount of salary and wage increases. At the

---

1 In *In re Application of Bigley*, 55 *N.J.* 53, 259 *A.2d* 213 (1969), this Court held that, through *N.J.S.A.* 2A:158–7, the Legislature conferred upon the Assignment Judge for a given county the "final and conclusive authority" to require a county board of chosen freeholders, on application by that county's prosecutor, to meet the needs of the prosecutor not provided for by the county in its regular or emergency appropriations for the prosecutor's office.

hearing to decide those issues, the Prosecutor presented statistical evidence in an attempt to support his position that the funds were necessary. The County challenged that evidence as well as the claims of the Prosecutor's witnesses. Moreover, the County asserted that employees under negotiated contracts were bound by those contracts because those employees had approved their terms.

In a published opinion, the trial judge first addressed the standard that should govern in evaluating the Prosecutor's request. *In re Taylor*, 393 *N.J.Super.* 425, 923 *A.*2d 368 (Law Div.2006). After canvassing the law, the judge concluded that the Prosecutor need only convince the court "that his request for additional funds is appropriate." *Id.* at 441, 923 *A.*2d 368. The judge then found that the statistical evidence supported the Prosecutor's position that his staff was overworked and underpaid in comparison to other counties. *Id.* at 445–47, 923 *A.*2d 368. Despite finding that "[t]he Prosecutor has not established that an increase in salary levels is somehow 'essential,' or that his office will not be able to fulfill some specific function entrusted to it without an increase in salaries," the judge nonetheless found that the "Prosecutor's request to increase salaries and wages to something close to the average of other prosecutor's offices around the state is substantively reasonable." *Id.* at 448, 923 *A.*2d 368. On the other hand, the judge rejected the Prosecutor's requests concerning salaries established by existing collective bargaining agreements, reasoning that it would not be fair to authorize salary increases beyond the amounts agreed upon by the employees, the County, and the Prosecutor in those agreements. *Id.* at 449, 923 *A.*2d 368. In that respect, the judge noted the importance of collective bargaining in the State and that "collective negotiations agreements are entitled to substantial respect." *Id.* at 450, 923 *A.*2d 368.

Nevertheless, the judge took a different view with regard to those employees—specifically the assistant prosecutors and the non-contract employees—whose 2006 salaries had not been estab-

lished through a collective negotiations process in which the Prosecutor had participated. The assistant prosecutors had agreed with the County to a five-percent increase for 2006, although the Prosecutor had not consented to that change and instead had requested a nine-percent increase. *Id.* at 453–54, 923 *A.2d* 368. Despite finding that the requested additional increase was not "essential" and that each assistant prosecutor would remain with the office without that increase, the judge approved the nine-percent adjustment for each assistant prosecutor for the 2006 calendar year. *Id.* at 457, 923 *A.2d* 368. The judge also found that a nine-percent increase for non-contract employees was appropriate. *Id.* at 456, 923 *A.2d* 368.

The judge next addressed the salaries of the chemist and the five agents, approving the Prosecutor's request to provide each of those employees with a six-percent increase, plus an additional sum of $3000 for the chemist. *Id.* at 457, 923 *A.2d* 368. Although the Prosecutor had not presented any statistical evidence to support the increases for those positions, the judge found that his requests were consistent with the increases for "most of the employees of the Prosecutor's office based on the collective negotiations agreements executed in January 2005." *Ibid.*

Finally, the judge considered the salaries of the First Assistant Prosecutor and the Chief of Detectives, who were non-contract employees. The judge found that each had performed "admirably" under a number of prosecutors and that the "Prosecutor's request to increase their salaries is particularly compelling." *Id.* at 457–58, 923 *A.2d* 368. Consequently, the judge approved a six-percent salary increase for both positions for 2006, and also gave the First Assistant Prosecutor an additional three-percent increase.

On appeal, the County argued that the trial judge should have applied a "reasonably necessary" standard rather than a "reasonably appropriate" standard. In his cross-appeal, the Prosecutor argued that the judge applied the correct standard but erred in failing to permit the Prosecutor to re-open the collective bargain-

ing agreements. The Appellate Division affirmed substantially for the reasons expressed by the trial judge. *In re Taylor,* 393 *N.J.Super.* 213, 218, 923 *A.*2d 239 (App.Div.2007). The County appealed, and we granted certification. 192 *N.J.* 294, 927 *A.*2d 1292 (2007).

We granted amicus curiae status to the Attorney General of New Jersey, six counties, the County Prosecutor's Association, and the New Jersey Association of Counties.

## II.

The principal issue before us is the standard that an Assignment Judge should apply when considering a *Bigley* application. The County urges that the proper standard flows from the plain language in the statute that authorizes approval for increases requested by the Prosecutor that are "reasonably necessary" for the "detection, arrest, indictment and conviction of offenders." *See N.J.S.A.* 2A:158–7. In contrast, the Prosecutor contends that the proper standard is whether the increases are "appropriate" and "what ought to be done."

## III.

### A.

The relevant statute provides as follows:

*All necessary expenses incurred by the prosecutor for each county in the detection, arrest, indictment and conviction of offenders* against the laws shall, upon being certified to by the prosecutor and approved, under his hand, by a judge of the Superior Court, be paid by the county treasurer whenever the same shall be approved by the board of chosen freeholders of such county. The amount or amounts to be expended shall not exceed the amount fixed by the board of chosen freeholders in its regular or emergency appropriation, *unless such expenditure is specifically authorized by order of the assignment judge of the Superior Court for such county.*

[*N.J.S.A.* 2A:158–7 (emphasis added).]

Although that statute has existed substantially in its current form since 1874, this Court has only interpreted it on two occasions. *See In re Application of Schragger,* 58 *N.J.* 274, 277 *A.*2d 212

(1971); *In re Application of Bigley,* 55 *N.J.* 53, 259 *A.*2d 213 (1969).

In *Bigley, supra,* similar to the situation in the present case, the prosecutor applied to the Assignment Judge for expenses needed in excess of the appropriations approved by the county. 55 *N.J.* at 55, 259 *A.*2d 213. The judge there granted the prosecutor's request to hire additional personnel and purchase certain equipment. *Ibid.* The county appealed and this Court granted direct certification. *Ibid.* The Court reviewed *Lewis v. Board of Chosen Freeholders of Hudson County,* 37 *N.J.L.* 254 (Sup.Ct.1874), in which that court held that in the absence of a statute, the county "was only morally obliged to pay expenses incurred by the prosecutor in discharging his duty." *Id.* at 255. The Court noted that in response to *Lewis* the Legislature that same year passed a law, referred to as the statute of 1874 but which later became *N.J.S.A.* 2A:158–7, requiring the county to pay "all necessary expenses incurred [for detection, arrest, indictment, and conviction of offenders against the law]." *Ibid.* The Court next discussed *State ex rel. Lindabury v. Board of Chosen Freeholders of Ocean County,* 47 *N.J.L.* 417, 1 *A.* 701 (Sup.Ct.1885), in which that court concluded that "[t]he plain intent of the statute [of 1874] was to confer upon the prosecutor authority to provide reasonable means to aid him in the performance of his official duties, with a guaranty that the necessary expenses incurred should be paid," and that it was the trial court's responsibility "to determine the reasonableness of the means employed, and the necessity of the expenses incurred." *Id.* at 55–56, 1 *A.* 701 (quoting *Lindabury, supra,* 47 *N.J.L.* at 424).

The Court emphasized that the Legislature required the trial court to exercise a "delegated legislative function and that in doing so [the court] must decide what ought to be rather than whether the action or inaction of the [county] was arbitrary or unreasonable." *Id.* at 57. The Court also reviewed the 1937 revision to the statute of 1874 and other statutes to conclude that, under *N.J.S.A.* 2A:158–7, the Assignment Judge has "the final and conclusive

authority to approve expenditures beyond appropriations." *Id.* at 58–59. To ensure a fair presentation of the issues, the Court imposed the requirement that the "prosecutor make an initial request of the [county] unless circumstances excuse that course" and "give notice to the [county] of [the] application before the Assignment Judge so that the [county] may communicate [its] views." *Id.* at 61. Ultimately, the Court affirmed the trial court's approval of the Prosecutor's request. *Id.* at 62.

Two years later, the Court decided *Schragger, supra,* in which the Mercer County Prosecutor filed an application under the statute seeking to hire more personnel and raise staff salaries. 58 *N.J.* at 276, 277 *A.*2d 212. The trial court granted the application and this Court granted direct certification. *Id.* at 276–77, 277 *A.*2d 212. The county challenged the statute as an unconstitutional delegation of legislative power to the judiciary. *Id.* at 278, 277 *A.*2d 212. In affirming the trial court, this Court rejected the county's challenge, finding it "quite appropriate for the Legislature to ask a judicial officer to pass upon the monetary requirements of the prosecutor, and equally appropriate for the judicial branch to accept the delegation of that authority." *Id.* at 279, 277 *A.*2d 212.

### B.

 We turn now to address the meaning of *N.J.S.A.* 2A:158–7. If the language is clear, we interpret the statute as written. *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). If the language is not clear or yields more than one plausible interpretation, then we may resort to extrinsic material to determine the Legislature's intent. *Id.* at 492–93, 874 *A.*2d 1039.

The word "necessary" is not defined in the statute. *Webster's II New College Dictionary* 748 (3rd ed.2005) defines it as "absolutely required," "indispensable," and "needed to bring out a certain effect or result." Further, *Black's Law Dictionary* 928 (5th ed.1979) cautions that the word "necessary" "must be considered in the connection in which it is used, as it is a word

susceptible of various meanings," and "may express mere conven-
ience or that which is indispensable or an absolute physical
necessity."

 We are satisfied that the Legislature did not intend to
authorize the Assignment Judge to approve increased funding at
the prosecutor's request based on mere convenience. Thus, we
conclude that the dictionary definition of necessary that means
"reasonably required," or "needed to bring out a certain effect or
result," is the interpretation that the Legislature intended. That
is, the plain words of the statute authorize the Assignment Judge
to approve expenses of the prosecutor that exceed the funds
appropriated by the county when those expenses are reasonably
required by the prosecutor to fulfill the statutory responsibilities.

In the present case, as noted, the judge approved the Prosecu-
tor's request for additional funds that were found to be "appropri-
ate." The County recommends a more balanced approach similar
to the standard that the Appellate Division applied in *In re
Application of Ruvoldt*, 187 *N.J.Super.* 81, 453 *A.2d* 896 (App.Div.
1982). In that case, the trial judge was asked to approve the
Hudson County Prosecutor's request for additional funds for new
equipment, more personnel, and salary increases. *Id.* at 84–85,
453 *A.2d* 896. The judge approved the salary increases, but did
not find that the new equipment and additional personnel "were
necessary in the sense of being 'reasonably required.' " *Id.* at 87,
453 *A.2d* 896. However, in evaluating the prosecutor's request,
the judge noted that the prosecutor failed to show need in light of
public resistance to increased governmental expenditures, as re-
flected in the Local Government Cap Law, *N.J.S.A.* 40A:4–45.2,
that limited or capped the amount of such increases. *Id.* at 87–88,
453 *A.2d* 896. On appeal, the Appellate Division concluded that
the trial judge instead "should have limited [the] inquiry to
whether the appropriations were reasonably necessary" without
concern for the limits established by the law. *Id.* at 88–89, 453
*A.2d* 896.

We agree with the analysis in *Ruvoldt*. In our view, the Legislature sought to strike a balance in *N.J.S.A.* 2A:158-7, between the fiscal responsibilities of the county and the funds needed by the prosecutor to carry out the statutory duties. Under the Local Budget Law, *N.J.S.A.* 40A:4-1 to -88, the counties are required to adopt a budget for each fiscal year, and that budget must be prepared on a cash basis, *N.J.S.A.* 40A:4-3. On the other hand, the office of the county prosecutor is created by the New Jersey Constitution. *N.J. Const.* art. VII, § II, ¶ 1. Within each county, the county prosecutor is vested with vast powers and is required to "use all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws." *N.J.S.A.* 2A:158-5. The potential for conflict between the county in performing its budgetary duty and the prosecutor in enforcing the criminal laws is apparent. To resolve those conflicts, the Legislature designated the Assignment Judge to determine, in the event that the prosecutor seeks additional funds, whether the additional appropriations sought are necessary to meet the prosecutor's responsibilities as established by law. *See N.J.S.A.* 2A:158-7.

The term "necessary" in the statute denotes a higher standard than the "appropriate" standard invoked by the lower courts in the present case. Frequently, an increase may be appropriate, but in view of the competing requests for funds from the county, those requests may not be "reasonably necessary" for the prosecutor to meet his statutory responsibilities. If the Assignment Judge concludes that the additional monies, although reasonable and appropriate, are not "reasonably necessary" to meet the statutory responsibilities of the prosecutor, then the additional expenses should be rejected. Conversely, if the Assignment Judge is satisfied that the additional monies sought are reasonably necessary, then those monies should be approved.

We recognize that this Court's reference in *Bigley, supra*, that the Assignment Judge "must decide what ought to be rather than whether the action or inaction of the [county] was arbitrary or

unreasonable," 55 *N.J.* at 57, 259 *A.*2d 213, may have engendered some confusion in determining the applicable standard. However, the phrase "what ought to be" must be considered in the context of the statute, *N.J.S.A.* 2A:158–7, which expressly authorizes the Assignment Judge to approve amounts that are "necessary" for the Prosecutor "in the detection, arrest, indictment and conviction of offenders." When viewed in that context, the plain words of the statute require a "reasonably necessary" standard that is more restrictive than the "appropriate" standard applied by the trial court.

In the present case, the trial judge expressly found that the "Prosecutor has not established that an increase in salary levels is somehow 'essential,' or that his office will not be able to fulfill some specific function entrusted to it without an increase in salaries." *Taylor, supra,* 393 *N.J.Super.* at 448, 923 *A.*2d 368. Also, the trial judge expressly found that the additional increase for the assistant prosecutors beyond the amount previously agreed to in negotiations was not essential. *Id.* at 457, 923 *A.*2d 368. We interpret those findings to mean that the salary increases, although appropriate, were not "reasonably necessary" for the Prosecutor to fulfill his statutory responsibilities. We additionally note that although statistical evidence is certainly admissible to show that the salaries of certain positions fall below the statewide average for such positions, such evidence alone may not satisfy the "reasonably necessary" standard. Another related consideration is whether the salary increases are "reasonably necessary" to retain and attract qualified employees.

In light of the trial judge's findings that the Prosecutor failed to establish that the salary increases were "reasonably necessary" or "essential," it was error to approve the Prosecutor's request to increase the salaries for those positions. Consequently, we reverse and remand to enter judgment in favor of the County in regard to those positions.

The trial judge's findings in respect to the First Assistant Prosecutor and the Chief of Detectives, however, are not as clear.

After noting the unique responsibilities of those positions and the background of the two people holding them, the trial judge concluded that the "Prosecutor's request to increase their salaries is particularly compelling." *Taylor, supra,* 393 *N.J.Super.* at 457–58, 923 *A.*2d 368. However, because the judge made no express finding that the increases for those two positions were "reasonably necessary" or "essential" to meet the Prosecutor's statutory requirements, we cannot determine whether the application of the "reasonably necessary" standard would result in the same conclusion. Consequently, we remand to the Assignment Judge to determine whether the salary requests for the First Assistant Prosecutor and the Chief of Detectives are "reasonably ·necessary."

## C.

Because we conclude that the trial judge found that the increases for the Assistant Prosecutors were not essential, that is, not "reasonably necessary," we need not address the County's argument that it was error to approve the increases above the salary levels accepted by the assistant prosecutors in their collective bargaining agreements. For completeness, however, we add the following in respect to those agreements.

As noted, the trial judge disapproved of increases for employees who had negotiated with the County a collective bargaining agreement to which the Prosecutor had consented, but the judge approved, with limitations, salary increases for groups of employees whose salaries for 2006 had not been approved by the Prosecutor in the collective negotiations process. *Id.* at 456–57, 923 *A.*2d 368.

In *Schragger,* this Court addressed a related issue. There, in addition to arguing that the money requested was not necessary, the county had argued that the Assignment Judge's role in approving salaries requested by the prosecutor was superseded by the New Jersey Employer–Employee Relations Act, *N.J.S.A.* 34:13A–1 to –30, which provides for collective negotiations between

governmental employers and employees. *Schragger, supra,* 58 *N.J.* at 279, 277 *A.*2d 212. In rejecting that argument, the Court explained that the prosecutor was "not a party to the negotiations" and, although the county and the collective bargaining units continued to negotiate employment conditions, "those parties may not negotiate away the prosecutor's capacity to perform the duties of his office." *Id.* at 280, 277 *A.*2d 212. The Court thus held that, despite the collective bargaining agreements, the Assignment Judge retains the responsibility to determine whether the requests of the Prosecutor are reasonably necessary. *Ibid.*

Consistent with our holding in *Schragger,* we conclude that when the prosecutor has not agreed to the salaries in the collective bargaining agreement and is able to garner sufficient evidence to establish that the requested increases are "reasonably necessary," then the Assignment Judge may order the funding of those requests. Nevertheless, when the county and the bargaining unit have reached an agreement on wages and salary, the prosecutor will have a very heavy burden to establish that additional sums are reasonably necessary for those employees.

## IV.

We reverse the judgment of the Appellate Division and remand for further proceedings consistent with the views expressed herein.

*For reversal and remandment*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—6.

*Opposed*—None.