**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3113-17T1

RATARSHA WILLIS,

 Plaintiff-Appellant,

v.

CARL WALKER,

 Defendant,

and

CYNTHIA FULLER
and THE COLLEGE
OF NEW JERSEY,

 Defendants-Respondents.

_____

  Argued December 16, 2019 – Decided July 6, 2020

  Before Judges Messano, Ostrer and Vernoia.

  On appeal from the Superior Court of New Jersey, Law
  Division, Mercer County, Docket No. L-0634-15.

  Lance D. Brown argued the cause for appellant (Lance
  Brown and Associates LLC, attorneys; Lance D. Brown
  and Sommer L. Spillane, on the briefs).

William Patrick Flahive argued the cause for respondent Cynthia Fuller.

Francis A. Raso, Deputy Attorney General, argued the cause for respondent The College of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Francis A. Raso and Agnes I. Rymer, Deputy Attorney Generals, on the brief).

PER CURIAM

In her Law Division complaint, plaintiff Ratarsha Willis asserted causes of action for sexual harassment in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, tortious conduct, and civil liability in accordance with N.J.S.A. 2A:58D-1 for invasion of privacy against her employer, defendant The College of New Jersey (TCNJ), and two TCNJ supervisors, defendant Carl Walker (Walker) and Cynthia Fuller (Fuller). Plaintiff appeals from a January 20, 2017 order granting in part TCNJ's and Fuller's motions for partial summary judgment; from November 3, 2017 orders granting TCNJ and Fuller summary judgment; and from a January 29, 2018 order denying plaintiff's motion for reconsideration of the November 3, 2017

orders.[1]  Having reviewed the record in light of the applicable legal principles, we affirm in part, reverse in part, and remand for further proceedings.

I.

Because we consider the court's orders granting summary judgment, we detail the undisputed facts before the motion court and consider those facts in the light most favorable to plaintiff, the party opposing defendants' summary judgment motions.  See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Plaintiff's Complaint

Plaintiff's complaint generally describes the facts giving rise to her claims against Walker, Fuller, and TCNJ.  The complaint alleges that in September 2012, plaintiff began her employment with TCNJ as a senior building maintenance worker.  Walker and Fuller were also employed by TCNJ, but as supervisors.  Plaintiff did not report directly to Walker or Fuller but was required to perform any employment related tasks they assigned to her.

---

[1]  Plaintiff's notice of appeal includes the January 29, 2018 order denying her motion for reconsideration as an order from which her appeal is taken, but she does not argue on appeal the court erred by entering the order.  We therefore do not address the January 29, 2018 order.  See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) (holding that an issue not briefed on appeal is deemed waived); Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008) (same).

In June 2013, plaintiff and Walker engaged in consensual sexual relations at her home. Without plaintiff's knowledge or consent, Walker made a video recording of their tryst on his cellphone. The recording captured plaintiff and Walker "engaged in consensual sexual acts with each other," and "showed the exposed intimate parts of" plaintiff and Walker.

According to the complaint, on a subsequent day Walker texted plaintiff, informed her he made the recording, and told her he was watching it at his desk at TCNJ. Walker also informed plaintiff he showed the recording to Fuller because she and another employee "were teasing [him] and saying that his penis was little," and he used the recording, "which showed the intimate parts of [plaintiff] and . . . Walker, to defend himself against [their] claims."

Plaintiff alleged Fuller discussed the recording with other TCNJ employees, but Fuller did not inform plaintiff about Walker's playing of the recording for her; report Walker's actions to the TCNJ human resources department; or take any steps to prevent further disclosure of the recording. Before plaintiff returned to work at TCNJ, she was contacted by the TCNJ human resources department and informed it received "four complaints from other people on the TCNJ campus who had seen the recording[]." Plaintiff

alleged it was at that time she "learned that the recording[] had been disclosed and disseminated to a wider audience than just . . . Walker and . . . Fuller."

Plaintiff alleged that on June 6, 2013, she filed a complaint with the TCNJ human resources department about Walker and Fuller. Plaintiff averred that, in response, Walker made requests and statements to her that "were intended to coerce and convince her to drop her complaint." Plaintiff claimed TCNJ failed to take immediate action in response to her complaint and she was forced to continue to work with Walker and Fuller. According to the complaint, Walker was permitted to continue to work at TCNJ until November 2013, when he resigned, and Fuller continued her employment, but she was suspended in April 2014. Plaintiff further alleged disclosure of the recording and other actions resulted in a hostile work environment and caused her emotional distress and embarrassment.

Plaintiff's complaint named TCNJ, Walker, and Fuller as defendants, and asserted the following fourteen causes of action: violation of the LAD (count one); liability for sexual harassment because of negligence (count two); liability for sexual harassment because of knowledge or constructive knowledge (count three); liability for sexual harassment because of control of the working environment (count four); punitive damages against TCNJ (count five);

negligent supervision, training, and/or retention (count six); individual liability for workplace harassment against Walker and Fuller (count seven); damages against Walker and Fuller as individuals (count eight); violation of constitutional right to privacy and from wrongful intrusion into plaintiff's private life (count nine); violation of common law right to privacy torts (count ten); intentional infliction of emotional distress (count eleven); negligent infliction of emotional distress (count twelve); violation of N.J.S.A. 2A:58D-1 (count thirteen); and claims against unidentified John Doe defendants (count fourteen).[2]

TCNJ and Fuller Move For Partial Summary Judgment

TCNJ filed a motion seeking partial summary judgment on counts six, nine, ten, eleven, twelve, and thirteen. TCNJ argued, at least in part, it was entitled to summary judgment on those counts because plaintiff did not file a notice of tort claim in accordance with the requirements of the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 59:12-3.[3] It also appears TCNJ claimed

---

[2] We adopt the characterization of plaintiff's claims as set forth in TCNJ's statement of material facts submitted in support of its August 2017 summary judgment motion because plaintiff admitted the characterization was accurate in her response to the statement of material facts.

[3] We discern the arguments made in support of the motion based on the colloquy between counsel and the court during the January 20, 2017 oral argument.

it was entitled to summary judgment on count twelve, which alleged negligent infliction of emotional distress, because the claim was barred under the Workers' Compensation Act, N.J.S.A. 34:15-1 to -146, and was entitled to summary judgment on count thirteen, which alleged a cause of action under N.J.S.A. 2A:58D-1, because there was no evidence TCNJ committed the criminal offense proscribed in N.J.S.A. 2C:14-9.[4]  Fuller joined in TCNJ's summary judgment motion, but Walker did not.

In support of its motion, TCNJ submitted a certification from the Supervisor of Claims of the State Department of Treasury, Division of Risk Management, stating that, based on a review of the pertinent records, plaintiff "never filed a [n]otice of [t]ort or [c]ontract [c]laim . . . as required" under the TCA.  Based on the record presented on appeal, it appears that in opposition to TCNJ's motion, plaintiff relied on her handwritten letters dated June 12, 2013 and July 9, 2013 to TCNJ's Equal Employment Opportunity (EEO) office, and a

---

[4] N.J.S.A. 2A:58D-1 authorizes a civil action for a victim of a crime committed by an actor in violation of N.J.S.A. 2C:14-9.

November 21, 2013 letter from her counsel to the Office of the President of TCNJ, contending they satisfied the TCA's notice requirements.[5]

At oral argument on the motions, the court and counsel discussed the counts of the complaint against TCNJ. TCNJ's counsel noted the first five counts of the complaint alleged sexual harassment claims and confirmed TCNJ was not moving for summary judgment on those claims. During colloquy with counsel, the court confirmed with plaintiff's counsel that counts seven and eight asserted claims only against Walker and Fuller individually, and the court granted summary judgment to TCNJ on those counts on that basis. The court also granted summary judgment on count nine to TCNJ and Fuller in her official capacity, finding that count did not allege a cognizable cause of action for

---

[5] TCNJ's motion papers did not include a statement of material facts as required by Rule 4:46-2, and plaintiff's reliance on the letters in opposition to the summary judgment motion is unsupported by an affidavit based on personal knowledge stating the letters were, in fact, written by and on behalf of plaintiff and sent to TCNJ's human resources department and the office of its president. See R. 1:4-4 and R. 1:6-6. In our de novo review of the summary judgment motion, we excuse the parties' respective departures from the requirements of the Rules because TCNJ's motion was based on the claim it was never served with a notice of tort claim, and that claim is supported by the Supervisor of Claims's certification. Additionally, TCNJ does not dispute, and indeed concedes, it received the handwritten letters and letter from plaintiff's counsel. Thus, the parties essentially stipulate there are no genuine issues of material fact related to service of a notice of tort claim, and the legal issue presented is whether the letters constituted the notice of claim required under the TCA.

vicarious liability. The court further confirmed with counsel that counts ten and eleven asserted intentional tort claims, and it granted summary judgment to TCNJ on those claims because they cannot be sustained against a public entity. In addition, the court conferred with plaintiff's counsel in an apparent off-the-record colloquy during which counsel agreed to entry of summary judgment for TCNJ on count thirteen.

The court noted the balance of TCNJ's summary judgment motion required only a consideration of the tort claims in counts six and twelve. The court suggested that count twelve, which alleged negligent infliction of emotional distress, was barred under the Workers' Compensation Act. The court, however, heard argument on whether TCNJ was entitled to summary judgment on counts six and twelve, and whether Fuller was entitled to summary judgment on counts six, seven, eight, ten, eleven and twelve, because plaintiff allegedly failed to file a notice of tort claim as required under N.J.S.A. 59:8-8.

The court rejected plaintiff's argument the letters she sent to TCNJ's EEO office and her counsel's November 21, 2013 letter to the office of TCNJ's president constituted substantial compliance with plaintiff's obligation to file a notice of tort claim under N.J.S.A. 59:8-8. The court found plaintiff failed to serve a notice of tort claim in accordance with the TCA, and, on that basis, it

granted TCNJ summary judgment on counts six and twelve, and summary judgment to Fuller on count nine, in her official capacity, and counts ten, and eleven. The court denied Fuller's motion for summary judgment on counts six, seven, eight, nine in Fuller's individual capacity, twelve, and thirteen.

The court entered a January 20, 2017 order reflecting its award of partial summary judgment to TCNJ and Fuller. Following the entry of the order, counts one through five, alleging sexual harassment claims, remained against TCNJ and Fuller. In addition, counts six, seven, eight, twelve, and thirteen remained as to Fuller, and count nine remained against Fuller in her individual capacity. All of the causes of action in the complaint remained against Walker.

TCNJ and Fuller Move for Summary Judgment on the Remaining Claims

Eight months later, TCNJ and Fuller moved for summary judgment on the remaining claims against them. The motions were supported by statements of material fact in accordance with Rule 4:46-2, and plaintiff properly responded to the statements and submitted counterstatements of material fact. We summarize the pertinent undisputed facts based on the parties' Rule 4:46-2 submissions to the motion court, and, to the extent there are disputed facts, we accord plaintiff the benefit of all favorable evidence and inferences. R. 4:46-2(c).

TCNJ hired plaintiff in September 2012 as a senior building maintenance worker. During the first two months of her employment, plaintiff worked the day shift and was supervised by Kenny Oliver. After the first two months of her employment, plaintiff switched to the night shift and reported to Ron Smith.

TCNJ maintains a policy prohibiting discrimination and sexual harassment in the workplace that applies to all employees. The policy bars "[v]erbal, written, or electronically sexually suggestive or obscene comments, jokes or propositions including letters, notes, e-mail, text messages, invitations, gestures[,] or inappropriate comments[.]" The policy also encourages employees who are subjected to, or witness, discrimination or harassment to "promptly report" incidents to TCNJ's EEO office. All employees are required to cooperate with the EEO office investigations and the failure to do so, may result in discipline, up to termination of employment.

Within three months of the commencement of her employment, plaintiff and Walker began a consensual, sexual relationship, which continued until June 2013. Plaintiff and Walker did not work the same shift at TCNJ when their relationship began. Plaintiff and Walker acknowledged that Walker was married during their relationship, and that plaintiff's reputation could be affected if anyone knew she was in a relationship with a married man.

11

In June 2013, plaintiff and Walker had consensual sexual relations in the bedroom of plaintiff's home. Without plaintiff's knowledge or consent, Walker recorded his and plaintiff's sexual relations in the bedroom on his cellphone. Plaintiff testified that based on what she and Walker did at her home, she believes the video recording exposed her "intimate parts."

Plaintiff testified Walker subsequently called her and told her about the recording, and he also texted her and told her he watched the video while at work at TCNJ. Although Walker testified he did not show Fuller the video, he also testified he scrolled through the pictures on his phone with Fuller and that he pulled the phone away when he reached the video. Plaintiff, however, testified Walker told her Fuller watched the recording while looking over his shoulder as he played it on his phone while at TCNJ.

Terrell Williams, another TCNJ employee, testified Fuller told him she had seen the video, and told him about the nature of the video and that Walker recorded it. Williams also testified that another TCNJ employee, Aaron Allen, reported he had seen the video. Fuller admitted telling her supervisor, Ron Smith, about the video, and testified she heard other TCNJ employees talking about the recording.

A-3113-17T1

Plaintiff testified a former TCNJ employee, Jimmy Carter, told her he heard about the recording from current TCNJ employees. Plaintiff also testified Walker told her TCNJ employees were referring to plaintiff as "Kim Kardashian." TCNJ employee Nakita Scott testified that everyone employed on the campus was talking about the video and she was told the video showed plaintiff performing oral sex on Walker. Plaintiff testified that a TCNJ kitchen employee, Natasha Parker, said she saw the recording, and that another employee, Kenny Oliver, reported that Fuller told him she was not "the only one that saw this video."

On June 6, 2013, the day after plaintiff states she learned about Walker showing the recording to Fuller, plaintiff filed a complaint with TCNJ's human resources department about Walker's disclosure of the recording in the workplace. At that time, she was informed by the human resources department "four people had already made complaints . . . about the video."

TCNJ's EEO office investigated plaintiff's complaint. During the investigation, Walker admitted showing the recording to Fuller. At the conclusion of the investigation, the EEO office issued a final report finding plaintiff "was subjected to sexual harassment and a hostile work environment based upon sex when, as admitted by . . . Walker, he viewed the video of the sex

13

act between he and [plaintiff] in the workplace." The EEO office further found "[t]his matter is . . . compounded by the fact that . . . Walker is a supervisor" with a "higher burden of responsibility . . . to ensure that the work environment is free from prohibited discrimination/harassment."

The report also noted Walker provided three different versions about whether Fuller had seen the recording, but it found Fuller "had some knowledge about a video of a sexual nature in the workplace."[6] The report concluded that because Fuller is a supervisor, she had an obligation to report the inappropriate material and her failure to do so violated TCNJ's anti-discrimination policy.

The report recommended the termination of Walker's employment because he subjected plaintiff "to sexual harassment [and a] hostile work environment based upon sex by bringing and viewing a videotape of his sexual encounter with [plaintiff] . . . in the workplace." The report also recommended the suspension and demotion of Fuller "because she was aware of sexually explicit material in the workplace and did not refer the matter to the appropriate office." Walker resigned in November 2013. Fuller was later demoted from her supervisory position and suspended for three days.

---

[6] The report explains Walker said he showed the recording to Fuller; he may have showed it to Fuller; and he tried to show it to her, but she did not see it.

After hearing oral argument on TCNJ's and Fuller's summary judgment motions, the court granted summary judgment to TCNJ and Fuller on counts one through five, finding plaintiff failed to present evidence establishing a prima facie case of sexual harassment. More particularly, the court noted that in order to sustain a hostile environment sexual harassment claim, plaintiff must present evidence establishing the conduct would not have occurred but for the plaintiff's sex; the conduct was sufficiently severe or pervasive to make a reasonable person believe the conditions or employment had been altered, and "the working environment is hostile or abusive."

The court found plaintiff did not present evidence showing the harassing conduct—which plaintiff claimed included her co-employees' conversations about the recording and their dirty looks and slurs—was directed against her because she was a woman. The court found the complained-of conduct was not "specifically sexual in nature"; there were "no specific sex-based references"; and there was "no evidence [] the conduct was directed . . . at . . . plaintiff because of her membership in a protected class or that she was treated any differently because she is a woman."

For those reasons alone, the court determined plaintiff failed to demonstrate a prima facie claim of hostile environment sex harassment and

granted TCNJ and Fuller summary judgment on counts one through five of the complaint. Based on the same finding, the court granted Fuller summary judgment on the other counts remaining against her: counts six, seven, eight, nine in Fuller's individual capacity, and twelve because they were premised on the contention plaintiff was subject to hostile work environment sexual harassment.[7]

The court also granted Fuller summary judgment on count thirteen, which asserted a cause of action under N.J.S.A. 2A:58D-1. The court found Fuller's alleged actions in making the recording known to others did not violate N.J.S.A. 2C:14-9.

The court entered November 3, 2017 orders granting TCNJ and Fuller summary judgment. Plaintiff settled her claims with Walker.

Plaintiff filed a motion for reconsideration of the court's orders, which was denied in a January 29, 2018 order. The court determined plaintiff did not present any "new or additional information . . . which [she] could not have provided on its first application." This appeal followed.

---

[7] In its November 3, 2017 order, the court granted summary judgment to Fuller on count nine in her individual capacity. As noted, in its January 20, 2017 order, the court granted summary judgment to Fuller on count nine in her official capacity based on plaintiff's failure to serve a notice of tort claim in accordance with the requirements of the TCA.

## II.

We "review[] de novo the . . . entry of summary judgment[,]" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014), applying "the same standard as the trial court," Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment is appropriate if the record demonstrates there is "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 135 (2017). When determining whether there is a genuine issue of material fact, we must consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 540.

If no genuine issue of material fact exists, the inquiry turns to "whether the trial court correctly interpreted the law." DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation omitted). We owe no deference to the trial court's legal analysis or conclusions. The Palisades At Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427,

17

442 (2017) (citing <u>Manalapan Realty, LP v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995)).

Plaintiff presents three arguments for our consideration. She contends the court erroneously dismissed her tort claims because her handwritten letters to TCNJ's EEO office, and her counsel's letter to TCNJ's Office of the President constituted proper and timely notices of tort claim under the TCA. She also argues the court erred by granting summary judgment on her sexual harassment claims based on its conclusion she failed to present evidence showing the allegedly harassing conduct occurred because of her sex. Last, she contends Fuller's disclosure of the existence and content of the recording violated N.J.S.A. 2C:14-9 and, therefore, the court should not have dismissed her N.J.S.A. 2A:58D-1 claim in count thirteen against Fuller. We consider the arguments in turn.

## A.

Plaintiff argues the court erred by granting summary judgment to TCNJ on the claims asserted in counts six and twelve, and by granting summary judgment to Fuller on counts ten and eleven, based on the court's conclusion

plaintiff did not file a notice of tort claim in accordance with the TCA.[8] Plaintiff concedes she did not serve a formal notice of tort claim, but she argues her June 12, 2013 and July 9, 2013 handwritten letters to TCNJ's EEO office, and her counsel's November 21, 2013 letter to TCNJ's Office of the President, substantially complied with the TCA's notice requirements. The court rejected plaintiff's argument, finding the letters "did not contain the minimum information required to substantially constitute a notice under the [TCA] and the applicable case law."

The TCA was enacted "to address the harsh consequences of strictly applying the common law contours of sovereign immunity," D.D. v. University of Medical and Dentistry of New Jersey., 213 N.J. 130, 133-34 (2013), but its "guiding principle . . . is that 'immunity from tort liability is the general rule and liability is the exception,'" Coyne v. DOT, 182 N.J. 481, 488 (2005) (quoting

---

[8] The court's January 20, 2017 order granted summary judgment to TCNJ on counts seven, eight, nine, ten, eleven, and thirteen for reasons unrelated to plaintiff's failure to comply with the requirements of the TCA. Similarly, the court granted Fuller's motion for summary judgment on count nine in her official capacity for reasons unrelated to plaintiff's failure to comply with the TCA. Plaintiff does not argue the entry of summary judgment on those claims was in error, and we therefore affirm the court's grant of summary judgment on those counts of the complaint. See Sklodowsky, 417 N.J. Super.at 657; Jefferson Loan Co., 397 N.J. Super. at 525 n.4. We consider plaintiff's failure to comply with the TCA only with respect to those counts for which the court applied that reasoning to grant summary judgment to TCNJ and Fuller.

Garrison v. Twp. of Middletown, 154 N.J. 282, 286 (1998)). Waiver of sovereign immunity is "enforced through the application of numerous express limitations embodied in the [TCA's] provisions." D.D., 213 N.J. at 133. "[T]he [TCA] establishes the procedures by which claims may be brought," Rogers v. Cape May County Office of Public Defender, 208 N.J. 414, 420 (2011) (quoting Beauchamp v. Amedio, 164 N.J. 111, 116 (2000)), including a mandatory written pre-suit notification of claim, ibid.; see also Lebron v. Sanchez, 407 N.J. Super. 204, 214 (App. Div. 2009) (explaining a plaintiff asserting a tort cause of action "must submit a notice of claim to the public entity" "[p]rior to filing a complaint" against the public entity).

The TCA prohibits the bringing of any action against a public entity or employee "unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in" the statute. N.J.S.A. 59:8-3. A notice of claim against a public entity or public employee must include the following information:

> (a) The name and post office address of the claimant;
>
> (b) The post[]office address to which the person presenting the claim desires notices to be sent;
>
> (c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted;

(d) A general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim;

(e) The name or names of the public entity, employee or employees causing the injury, damage or loss, if known; and

(f) The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed.

[N.J.S.A. 59:8-4.]

A written notice of claim for injury or damages must be filed with the public entity, N.J.S.A. 59:8-7, "not later than the 90th day after accrual of the cause of action," N.J.S.A. 59:8-8. Where a putative plaintiff fails to file a timely notice of claim, he or she "shall be forever barred from recovering against a public entity or employee."[9] N.J.S.A. 59:8-8.

We have recognized these requirements should not be a "trap for the unwary," and we have permitted parties to prosecute claims so long as "notice

---

[9] The TCA allows for the filing of a notice of tort claim beyond the ninety-day period as permitted by N.J.S.A. 59:8-9. See D.D., 213 N.J. at 146-47 (explaining the N.J.S.A. 59:8-9 standard for obtaining leave to file a late notice of tort claim). Plaintiff never sought leave to file a late notice of tort claim in accordance with N.J.S.A. 59:8-9.

21

has been given in a way, which . . . substantially satisfies the purposes for which notices of claims are required." Lebron, 407 N.J. Super. at 215-16. Specifically, those purposes are:

> (1) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit; (2) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense; (3) to afford the public entity a chance to correct the conditions or practices which gave rise to the claim; and (4) to inform the State in advance as to the indebtedness or liability that it may be expected to meet.
>
> [McDade v. Siazon, 208 N.J. 463, 475-76 (2011) (internal quotation marks omitted) (quoting Beauchamp, 164 N.J. at 121-22).]

"[T]he doctrine of substantial compliance . . . has been limited carefully to those situations in which the notice, although both timely and in writing, had technical deficiencies that did not deprive the public entity of the effective notice contemplated by the statute." D.D., 213 N.J. at 159. To rely on the doctrine of substantial compliance, a plaintiff must show:

> (1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim; and (5) a reasonable explanation why there was not strict compliance with the statute.

22

[Lebron, 407 N.J. Super. at 216 (quoting Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 151 (2003)) (internal citations and quotations omitted).]

Whether a given notice substantially complies with the requirements entails "a fact-sensitive analysis involving the assessment of all of the idiosyncratic details of a case." Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 356 (2001) (quoting Alan J. Cornblatt, PA v. Barow, 153 N.J. 218, 240 (1998)).

Here, plaintiff relies on her June 12, 2013 and July 9, 2013 letters to TCNJ's EEO office, and her counsel's November 21, 2013 letter to TCNJ's Office of the President, and claims they are sufficient to constitute the requisite notice of her tort claims. As noted, she concedes she never formally filed a notice of claim with TCNJ, but she argues the letters substantially complied with the TCA's notice requirements because they satisfied the purposes of the filing of the notice of claim required under the statute.

We are not persuaded by plaintiff's arguments because her letters of June 12, 2013, and July 9, 2013, do not provide notice she had, or intended to assert, any claims against TCNJ, Walker, or Fuller. The letters were sent to TCNJ's EEO office as permitted under TCNJ's "Procedures for Internal Complaints Alleging Discrimination in the Workplace/Educational Environment" for reports of alleged violations of TCNJ's anti-discrimination policy. The letters

constitute reports of claimed violations of TCNJ's anti-discrimination policy, and neither letter identifies or suggests any potential or threatened tort claims against anyone.

The June 12, 2013 letter mentions Walker's playing of the recording and the failure of Fuller to take any action as a supervisor in response to seeing it, but, other than plaintiff noting her lawyer advised her to "press criminal charges [against Walker] for that video," the letter does not threaten, assert, or mention any other intended claims. The July 9, 2013 letter makes no mention of Walker or the recording at all and does not express any intention to assert any claims; instead, the letter describes an incident during which plaintiff and Fuller exchanged unpleasantries. The letters do not include the information related to a tort claim required under N.J.S.A. 59:8-4 because the letters do not identify any claims for which such information could have been provided. Thus, the motion court correctly found the letters did not include notice of any tort claims.

The June and July letters also did not substantially comply with the TCA's requirements. The failure of the letters to identify any tort claims rendered them ineffective in "substantially satisfy[ing] the purposes for which notices of claims are required." Lebron, 407 N.J. Super. at 216. Plaintiff's failure to assert or identify any tort claims in the letters or provide any of the other information

required by N.J.S.A. 59:8-4 prevented TCNJ from settling any meritorious claims, investigating tort claims, or assessing its potential liability and indebtedness, and thereby deprived plaintiff of the purposes for which a notice of claim is required. See McDade, 208 N.J. at 475-46.

Plaintiff also failed to demonstrate reasonable reliance on the substantial compliance doctrine as to the June and July letters. She made no showing of any steps taken to comply with the TCA, and she did not offer any reasonable explanation for her failure to strictly comply with the TCA's requirements. See Lebron, 407 N.J. Super. at 216. And, as noted, she failed to provide reasonable notice of her tort claims because the letters merely reported to the EEO office what she claimed were acts of sexual harassment, and the letters never mentioned, threatened, or asserted any tort claims. See ibid.

Plaintiff's counsel's November 21, 2013 letter to TCNJ's Office of the President suffers from similar infirmities.[10] As found by the motion court, the

_____

[10] The motion court did not address the timeliness of the November 21, 2013 letter, which was sent more than ninety days following plaintiff's discovery in early June 2013 that Walker showed the recording to Fuller, because the court concluded the letter did not constitute a notice of claim under the TCA. We offer no opinion on the accrual date of plaintiff's tort claims, N.J.S.A. 59:8-3, or whether the letter would have been timely filed under N.J.S.A. 59:8-8 if it had constituted a compliant notice of tort claim or substantially complied with the requirements for a notice.

letter does not provide the information required by N.J.S.A. 59:8-4, and instead is simply a letter threatening immediate litigation in the event TCNJ did not meet with plaintiff's counsel and resolve whatever claims plaintiff later asserted. The letter notes counsel was retained to represent plaintiff "concerning sexual harassment and invasion of privacy at work" but does not assert or threaten any particular tort claims. The letter also does not provide an "amount claimed as of the date of presentation . . . insofar as it may [have been] known at the time." N.J.S.A. 59:8-4.

Again, the letter does not serve "the purposes for which notices of claims are required," Lebron, 407 N.J. Super. at 215-16, and, in fact, the letter is inconsistent with the purposes of the notice requirement of the TCA, see McDade, 208 N.J. at 475-76. The letter failed to inform TCNJ of its potential indebtedness and liability, permit correction of the conditions or practices, or allow TCNJ to investigate any tort claims because the putative tort claims were not identified and the letter did not include any indication of the damages claimed. See ibid. The letter also undermines an important purpose of the TCA's notice provisions—allowing the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit—because the letter made clear that if TCNJ did not resolve

plaintiff's unspecified tort claims within a few weeks, plaintiff would file a complaint. See ibid. Plaintiff further fails to demonstrate an entitlement to rely on the substantial compliance doctrine because her reliance on her counsel's letter is untethered to any showing she took any steps to comply with the TCA and she does not offer any reasonable explanation for her failure to strictly comply with the TCA's requirements. See Lebron, 407 N.J. Super. at 216.

In sum, the court did not err by finding plaintiff failed to comply or substantially comply with the notice provisions of the TCA. We affirm the court's January 20, 2017 order granting TCNJ summary judgment on counts six and twelve,[11] and Fuller summary judgment on counts ten and eleven due to plaintiff's failure to file a timely notice of claim under the TCA.

## B.

Plaintiff also claims the court erred by granting TCNJ and Fuller's summary judgment on the sexual harassment claims that remained against them following entry of the court's January 20, 2017 order. More specifically,

---

[11] During the colloquy on TCNJ's summary judgment motion, the court considered whether count twelve was barred under the Workers' Compensation Act, and the court noted it would determine if the count should be dismissed on that basis. The record does not reveal whether the court also granted summary judgment to TCNJ on that basis, and plaintiff does not address the issue in her brief on appeal. The issue is not before us, and we offer no opinion on it.

27

plaintiff argues the court erred by concluding she failed to present sufficient evidence establishing the prima facie case of hostile environment sex discrimination that was essential to the causes of action asserted in counts one through five against TCNJ and Fuller; and six, seven, eight, nine in Fuller's individual capacity, and twelve against Fuller.

In Lehmann v. Toys 'R' Us, Inc., our Supreme Court defined the elements "for determining whether workplace acts of sexual harassment constitute prohibited discrimination under the LAD." Cutler v. Dorn, 196 N.J. 419, 430 (2008) (citing Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 603-04 (1993)). A female plaintiff alleging a hostile environment based on acts of sexual harassment must prove the following four elements: "the complained-of conduct (1) would not have occurred but for the employee's gender; and it was (2) severe or pervasive enough to make a (3) reasonable woman believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." Ibid. (quoting Lehmann, 132 N.J. at 603-04) (emphasis in original). Even "one incident of harassing conduct can create a hostile work environment." Taylor v. Metzger, 152 N.J. 490, 499 (1998).

In Lehmann, the Court further explained that "[w]hen the harassing conduct is sexual or sexist in nature, the but-for element will automatically be

satisfied." 132 N.J. at 605. The Court provided examples of such conduct, including "sexual touchings or comments, or where [a woman] has been subjected to harassing comments about the lesser abilities, capabilities, or the 'proper role' of members of her sex," and it held that where such conduct is proven, a plaintiff "has established that the harassment occurred because of her sex." Ibid.

The Court also observed harassing conduct supporting a sexual harassment claim "need not be sexual in nature; rather its defining characteristic is that the harassment occurs because of the victim's sex." Id. at 602. "For example, if a supervisor is equally crude and vulgar to all employees, regardless of their sex, no basis exists for a sex harassment claim." Id. at 604. However, a female plaintiff establishes "non-facially sex-based" conduct occurred because of her sex by demonstrating the conduct "was accompanied by harassment that was obviously sex-based," or by "show[ing] that only women suffered the non-facially sex-based harassment." Id. at 605.

Here, the court granted summary judgment to TCNJ and Fuller on plaintiff's sex-harassment-based claims by singularly concluding plaintiff failed to demonstrate the harassing conduct about which plaintiff complained— including her co-employees' "dirty looks" and the slurs against her—were

29

directed against her because of her sex. In other words, the court found plaintiff did not satisfy the first element of the <u>Lehmann</u> standard because she failed to demonstrate the alleged conduct would not have occurred but for her gender. <u>See</u> <u>ibid.</u> The court also held that because Walker's disclosure of the recording in the workplace and Fuller's alleged disclosure of the existence and content of the recording to other co-employees were not "sexual or sexist in nature, the but-for element" was not "automatically . . . satisfied." <u>Ibid.</u>

The motion court viewed the evidence supporting plaintiff's claims too narrowly, and incorrectly limited its focus to the actions of plaintiffs' co-employees following Walker's playing of the recording for Fuller in the workplace. The actions of Fuller and plaintiff's co-employees following Walker's playing of the recording are important components of the course of conduct plaintiff alleges comprised the hostile environment, but it is Walker's playing of an explicit and surreptitiously recorded video of plaintiff engaged in sexual acts that is the fulcrum upon which plaintiff's hostile environment claim turns. It is that act which provides the context for the proper analysis of plaintiff's hostile environment claims because it is Walker's playing of the recording that gives context to plaintiff's hostile environment claims.

A-3113-17T1

The Court recognized in <u>Lehmann</u> that the standard for defining a sexual harassment claim "must be 'sufficiently flexible to recognize the wide variety of forms which hostile work environment sexual discrimination may take and to allow for the evolution of this new area of law.'" <u>Id.</u> at 603. Thus, we are not constrained to conclude that simply because Walker's actions did not "take[] the form of [the] unwelcome sexual touchings and comments," that are present "[i]n the majority of hostile work environment cases," <u>id.</u> at 602, his playing of the recording in the workplace for his and plaintiff's co-employee Fuller was not sexual in nature and did not automatically satisfy the first prong of the <u>Lehmann</u> standard.

To the contrary, Walker's playing of the recording was clearly sexual in nature; it showed plaintiff engaged in sexual acts, and Walker exhibited it in the workplace to Fuller. Other than unwanted sexual touching of a fellow employee in the workplace, we cannot conceive of a more abhorrent example of sexual conduct than a supervisor's exhibition in the workplace of a secretly recorded film of a co-employee engaged in sexual relations. Indeed, the TCNJ EEO office recognized the sexual nature of Walker's playing of the recording; it concluded the playing of the recording alone was an act of sexual harassment and created a hostile work environment for plaintiff.

Walker's playing of the recording for Fuller was the genesis of all of the other harassing conduct upon which plaintiff's sexual harassment claims are based. It "is sexual or sexist in nature," and therefore satisfied the "but for" element of the Lehmann standard. Id. at 605. In its focus on the conduct that followed the playing of the recording, the motion court erred by failing to recognize that where, as here, "non-facially sex-based" conduct is "accompanied by harassment that was obviously sex-based," the plaintiff satisfies the Lehmann but-for standard. Id. at 605.

We reverse the court's order granting summary judgment to TCNJ and Fuller on counts one through five, and to Fuller on counts six, seven, eight, and twelve, because the court erred by finding plaintiff did not present evidence satisfying the first prong of the Lehmann standard for a hostile environment claim based on sex discrimination. For the same reason, we reverse the court's award of summary judgment to Fuller on count nine in her individual capacity.

We recognize that, in support of their motions, TCNJ and Fuller also asserted they were entitled to summary judgment on the sexual harassment claims because plaintiff cannot prove the remaining elements of a hostile environment claim under the Lehmann standard. The motion court did not address those arguments after finding plaintiff could not sustain her burden of

proving the "but for" element of her sexual harassment claims. TCNJ and Fuller reprise the arguments on appeal, but we do not address them because, although we review a court's decision on a summary judgment motions de novo, we do not decide the motions "tabula rasa." Estate of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 301-02 (App. Div. 2018). The court shall address those arguments as appropriate on remand.

C.

Plaintiff contends the court erred by granting Fuller summary judgment on count thirteen, which alleged a cause of action under N.J.S.A. 2A:58D-1 based on Fuller's alleged discussion of Walker's recording with TCNJ employees. Plaintiff claims Fuller's alleged disclosure to others of the existence and content of the recording constitutes a disclosure of a "recording . . . of another person who is engaged in an act of sexual penetration or sexual contact" that is prohibited under the statute and gives rise to cognizable cause of action. N.J.S.A. 2A:58D-1(b).

"'Questions related to statutory interpretation are legal ones.' Thus, '[w]e review such decisions de novo, "unconstrained by deference to the decisions of the trial court . . . ."'" State v. Rodriguez, 238 N.J. 105, 113 (2019) (first quoting

33

State v. S.B., 230 N.J. 62, 67 (2017), then quoting State v. Grate, 220 N.J. 317, 329 (2015)).

N.J.S.A. 2A:58D-1(b) authorizes a civil cause of action against an actor who violates N.J.S.A. 2C:14-9.  The statute provides:

> An actor who, in violation of . . . N.J.S.A. 2C:14-9[], discloses any photograph, film, videotape, recording or any other reproduction of the image of another person who is engaged in an act of sexual penetration or sexual contact, the exposed intimate parts of another person, or the undergarment-clad intimate parts of another person shall be liable to that person, who may bring a civil action in the Superior Court.  For purposes of this section:  (1) "disclose" means sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, publish, distribute, circulate, disseminate, present, exhibit, advertise, offer, share, or make available via the Internet or by any other means, whether for pecuniary gain or not; and (2) "intimate parts" has the meaning ascribed to it in N.J.S.A. 2C:14-1.
>
> [N.J.S.A. 2A:58D-1(b) (emphasis added).]

Plaintiff contends Fuller's alleged actions in discussing with third parties the existence and contents of Walker's recording "advertised" the recording and, as a result, Fuller is liable under the statute.

"When construing a statute, our primary goal is to discern the meaning and intent of the Legislature.  In most instances, the best indicator of that intent is the plain language chosen by the Legislature."  State v. Gandhi, 201 N.J. 161,

34

176 (2010) (citation omitted); accord DiProspero v. Penn, 183 N.J. 477, 492 (2005). Determining the Legislature's intent, "begins with the language of the statute, and the words chosen by the Legislature should be accorded their ordinary and accustomed meaning." State v. Hudson, 209 N.J. 513, 529 (2012). N.J.S.A. 1:1-1 requires that "[i]n the construction of [our] laws and statutes, . . . words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the [L]egislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language."

Where a statute's language "leads to a clearly understood result, the judicial inquiry ends without any need to resort to extrinsic sources." Hudson, 209 N.J. at 529. Courts may "resort to extrinsic evidence" if the legislation is ambiguous and susceptible to more than one interpretation, DiProspero, 183 N.J. at 492-93, however, a court should not "rewrite a plainly-written enactment . . . or presume that the [drafter] intended something other than that expressed by way of the plain language," Id. at 492. However, "where a literal interpretation would create a manifestly absurd result, contrary to public policy," that reading should be rejected because "the spirit of the law should

control." Hubbard v. Reed, 168 N.J. 387, 392 (2001) (quoting Turner v. First Union Nat'l Bank, 162 N.J. 75, 84 (1999)).

Plaintiff argues the ordinary meaning of the term "advertise" encompasses Fuller's discussions with other TCNJ employees about the recordings. She relies on the following definition of "advertise" found in an edition of Black's Law Dictionary: "To advise, announce, apprise, command, give notice of, inform, make known, publish. To call a matter to the public attention by any means whatsoever . . . ."[12] Plaintiff contends Fuller's conversations with her co-workers "made known" and "call[ed the recording] to the public attention," and therefore constituted a prohibited form of disclosure—advertising—under N.J.S.A. 2C:14-9(c) and N.J.S.A. 2A:58D-1(b).

Plaintiff ignores that the definition upon which she relies defines advertise in multiple ways. For example, under the definition, advertise means "advise" or "announce" or "make known" or "publish," and includes other alternative meanings as well. "[W]hile dictionary definitions may be employed to define imprecise terms, a simple canvassing of dictionaries does not provide a definitive answer unless we are first able to determine the sense in which the Legislature used the term." State v. Dixon, 396 N.J. Super. 329, 340 (App. Div.

---

[12] Black's Law Dictionary 54 (6th ed. 1990).

2007) (quoting <u>State v. N.I.</u>, 349 N.J. Super. 299, 310 (App. Div. 2002)). Where a word is "susceptible of various meanings" it is appropriate to employ other principles of statutory construction to determine the meaning intended by the Legislature. <u>In re Taylor</u>, 196 N.J. 162, 172-73 (2008).

We derive legislative intent "from an overall understanding of the words utilized and their relationship to other related provisions." <u>Wells Reit II-80 Park Plaza, LLC v. Dir., Div. of Taxation</u>, 414 N.J. Super. 453, 469 (App. Div. 2010) (quoting <u>Cooper Hosp. Univ. Med. Ctr. v. Prudential Ins. Co.</u>, 378 N.J. Super. 510, 514 (App. Div. 2005)). "Inferences about a statute's meaning can also be drawn from . . . its 'composition and structure.'" <u>Ibid.</u> (quoting <u>State v. Smith</u>, 197 N.J. 325, 333 (2009)).

N.J.S.A. 2A:58D-1 imposes liability on a person who violates a criminal statute, N.J.S.A. 2C:14-9(c), by disclosing "any photograph, film, videotape, recording or any other reproduction of the image of another person who is engaged in an act of sexual penetration or sexual contact." The plain language of the statute is directed to the imposition of liability for the disclosure of "image[s]."[13] Neither the criminal statute, N.J.S.A. 2C:14-9(c), nor N.J.S.A.

---

[13] The scant legislative history concerning the enactment of N.J.S.A. 2C:14-9(c) is consistent with the plain language of the statute. The Senate Judiciary

2A:58D-1 expressly prohibits or criminalizes discussions or communications about the protected images, and "[i]t is not our job to engraft requirements [on a statute] that the Legislature did not include. It is our role to enforce the legislative intent as expressed through the words used by the Legislature." Lippman v. Ethicon, Inc., 222 N.J. 362, 388 (2015).

In determining legislative intent, we may consider "the meaning of the word or series of words may be ascertained by reference to a neighboring set of words or similar provisions in the same statutory scheme" to determine legislative intent. Wells Reit, 414 N.J. Super. at 469. To "disclose" an image in violation of the statutes, a person must "sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, publish, distribute, circulate, disseminate, present, exhibit, advertise, offer, share, or make available . . ." the image. N.J.S.A. 2A:58D-1(b); N.J.S.A. 2C:14-9(c).

---

Committee Statement concerning the enactment of N.J.S.A. 2C:14-9(c) notes that, under the statute, "[t]he unlawful disclosure such as selling, publishing or other distribution of such recorded images would be a crime of the third degree." S. 2366 (Senate Judiciary Committee Statement), 210th Leg. (Nov. 24, 2003) (emphasis added). Similarly, Assembly sponsor Patrick Diegnan, Jr., listed the intended prohibitions included in the Assembly bill, and stated "it would also be a crime of the third degree if the person sells, distributes, circulates, gives or otherwise discloses the unlawfully obtained photograph, videotape, or recording." A3286 (Sponsor's Statement), 210th Leg. (Feb. 4, 2003) (emphasis added).

We consider the meaning of the term "advertise" in the context of each of the other forms of prohibited disclosure listed in the statutes. Each of the others applies only to the production, transfer, or offer to transfer of protected images. For example, the only reasonable interpretation of N.J.S.A. 2C:14-9's prohibition against "sell[ing]" is that an actor is prohibiting from selling an image. Similarly, the statutes' prohibitions against manufacturing, giving, providing, lending, offering, and all of the other specified forms of disclosure make sense only if they apply to the production, transfer, or offer to transfer, the actual images that are subject to the statutes' protections. Stated differently, an actor can only sell, manufacture, give, provide, offer or take any of the other prohibited forms of disclosure with regard to an actual image.

Mere discussion of the content and existence of images does not involve the production, transfer or offer to transfer actual images, and, for that reason, it would be incongruous to interpret "advertise" to include such discussions as a form of prohibited disclosure. Moreover, given the statutes' inclusion of a detailed list of prohibited disclosures, it can be reasonably inferred that if the Legislature intended to include the mere discussion of prohibited images within the statutory protections, it would have made express provision for same. We interpret the Legislature's failure to do so as an expression of its intention to

exclude mere discussions of protected images as a form of disclosure prohibited under either N.J.S.A. 2C:14-9(c) or N.J.S.A. 2A:58D-1(b). See Evans v. Atl. City Bd. of Educ., 404 N.J. Super. 87, 92 (App. Div. 2008) (explaining "the doctrine of 'expressio unius est exclusio alterius' . . . suggests that the mentioning of one or more things excludes others").

We must give effect to the Legislature's inclusion of the term advertise as a form of prohibited disclosure of images under the statutes. See Acoli v. N.J. State Parole Bd., 224 N.J. 213, 231 (2016) (noting "statutory construction abhors an interpretation that would render meaningless words within a statute"). We do so by applying a definition of advertise that is consistent with N.J.S.A. 2A:58D-1(b)'s plain language and with the statutes other provisions.

Among the definitions of advertise proffered by plaintiff, one is wholly consistent with each of the other forms of prohibited disclosure encompassed by the statute, as well as the statutes' plain language. The definition of advertise includes the term "publish," which means "to issue and prepare (printed material) for public distribution or sale." Webster's II New College Dictionary 916 (3d ed. 2005): see also Black's Law Dictionary 1480 (11th ed. 2019) (defining "publish" as "[t]o distribute copies (of a work) to the public"). Thus, any action to issue the actual images in Walker's recording would fall within the

statutes' proscriptions. There is, however, no evidence Fuller published the actual recording or any images from it to anyone. The evidence shows only that she spoke about the images. The court therefore correctly granted Fuller summary judgment on count thirteen.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION